# Metropolitan Edison Co. v. Middle Smithfield Materials

C.P. of Monroe County, no. 3545 CV 2009.

*Delano M. Lantz,* for plaintiff.
*Richard W. Keifer III,* for defendant

MARK, *J.*, December 13, 2010—

## OPINION IN SUPPORT OF ORDER PURSUANT TO Pa.R.A.P. 1925(a)

Plaintiff has appealed our order of September 10, 2010, that denied plaintiff's motion for post trial relief. After the appeal was filed, we issued an order directing plaintiff to file a statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Plaintiff complied. We now file our opinion pursuant to Pa.R.A.P. 1925(a).

For the reasons that follow, we believe that the appeal is procedurally defective, and therefore, should be dismissed or quashed. In the alternative, we believe that the order we issued following the equity trial in this case was supported by both the facts and the applicable law, and therefore, should be affirmed.

On April 14, 2009, plaintiff filed a complaint and a

motion for preliminary injunction seeking both prohibitory and mandatory injunctive relief. Specifically, plaintiff sought to enjoin defendant from conducting excavation activities within a 100-foot wide utility easement that transverses defendant's property, as well as an order directing that the easement be relocated to a different location on the property. The gravaman of the complaint was that defendant's excavation and related activities within the easement area had adversely affect the integrity of four utility poles carrying electric lines, interfered with plaintiff's use of the easement as well as its ability to service the lines, and created unsafe conditions.

Defendant filed answers denying that it had created unsafe conditions or adversely affected the integrity of the poles. Defendant also contended that plaintiff was aware or should been aware of the excavation activities on the property and asserted the defenses of estoppel and laches.

After a hearing on the request for a preliminary injunction was scheduled, plaintiff filed a motion asking the court to view the premises. The motion was granted and the hearing was continued so that the view and the hearing could occur on the same day.

On May 26, 2009, the view was conducted in the presence of the attorneys and representatives for both parties. The hearing on plaintiff's request for a preliminary injunction was convened immediately after the view. During the hearing, several witnesses testified and exhibits offered by plaintiff were admitted into evidence. At the conclusion of the hearing, the parties were given the opportunity to submit briefs.

On June 19, 2009, based on the evidence presented at hearing, the briefs of the parties, and the applicable law, we issued a preliminary injunction enjoining defendant from conducting excavation and related activities within a 100-foot radius around each of the four utility poles located within the easement. The order directed plaintiff to file an injunction bond. (Order, filed June 19, 2010) Plaintiff elected not to post the bond. Defendant did not move to dissolve the injunction.

On January 19, 2010, following a continuance requested by defendant and agreed to by plaintiff, a final hearing on plaintiff's request for permanent injunctive relief was convened. At the request of both parties, the transcript and exhibits from the preliminary injunction hearing were formally admitted into evidence.[1] Limited additional evidence was presented by both plaintiff and defendant. The parties were afforded the opportunity to submit proposed findings of fact and conclusions of law.

On June 24, 2010, after a continuance requested by defendant, we convened a hearing at which we announced our decision in this case. During the hearing, we summarized our findings and analysis of the case, articulated the reasons and rationale for our decision, referenced the legal authority on which we relied, and announced the decision that plaintiff is challenging or attempting to challenge in this appeal. (N.T., 6/24/2010, 2-30) We incorporate our reasoning expressed during the announcement hearing into this opinion by reference.

---

1. The notes of testimony and the exhibits admitted during both the preliminary injunction hearing and the final hearing have been filed of record. The transcripts and exhibits are included in the certified record.

The formal injunction order was entered the next day. In broad summary, the order may be broken into two component parts.

First, we granted the permanent injunctive relief requested by plaintiff. Specifically, we ordered that the easement, as well as the electric poles and lines, be relocated to a different location on defendant's property. To preserve the status quo, we continued the preliminary injunction until the relocation had been completed. Due to the condition of the poles, the immediate safety concerns, and the public interest in moving the poles and lines that had been demonstrated during the hearings, we directed prompt movement toward relocation. We required that the parties meet and discuss in good faith reasonable limitations on excavation and mining activity within the new easement area, especially in and around the new poles to be installed. We also established time frames for the discussions, the execution and recording of the new easement, the extinguishment of the old easement, and the construction of the new poles and lines.[2] (Order, filed June 25, 2010. See N.T., 6/24/2010, 17-30 and N.T., 9/7/2010, 11-19)

Second, we directed that the actual cost of relocation be shared equally between the parties. Defendant's obligation was capped at $30,000, an amount slightly more than one-half the total cost of relocation as calculated by plaintiff using the industry standard, proprietary costing system that it considers to be completely accurate and routinely uses to calculate the cost of all projects. Defendant was permitted

2. Nonetheless, the parties neither moved quickly toward relocation nor attempted to comply with the time frames established in the order. (See N.T., 9/7/2010, 8-19)

to pay his share of the relocation in installments, with interest, over a one year-period. In addition, as discussed during the hearings, defendant was given the opportunity to perform basic grading, tree, brush, and shrubbery removal at its own expense. Finally, we directed that each party bear its own costs. (Order, filed June 25, 2010. See N.T., 6/24/2010, 17-27)[3]

On July 6, 2010, plaintiff filed a motion for post-trial relief. Plaintiff did not take issue with the provisions of our order that granted permanent injunctive relief. Instead, its motion challenged and sought modification of only the cost-sharing provisions. Primarily, plaintiff reiterated its position that defendant should be held solely responsible for all relocation costs. In addition, plaintiff asserted that we erred in capping defendant's financial responsibility, in permitting installment payments, and in allowing a potential credit to defendant for grading and similar work that he performed.

On July 7, 2010, we issued an order scheduling a hearing on plaintiff's motion for post trial relief. Since only the cost-sharing provisions had been challenged, we directed that the times frames for relocation discussions and work would not be stayed or extended by plaintiff's filing. (Order, filed July 7, 2010)

Incredibly, plaintiff responded by filing a motion for stay pending appeal. Despite vehemently asserting immediate and irreparable harm, safety concerns, and the public interest during the injunction hearings, plaintiff

---

3. Neither party has challenged or appealed the portion of our decision that granted injunctive relief and ordered relocation of the poles. Plaintiff's appeal challenges only the cost-sharing provisions of our order.

took the position that, because it was not satisfied with the economic provisions of the order, the relocation should wait until its motion and all appeals had been decided. We denied plaintiff's request to delay the relocation that it had requested because: 1) the evidence had shown that prompt relocation was necessary; and 2) there was obviously no need to delay the relocation while plaintiff argued about money since cost sharing could, if plaintiff was successful in its challenge to the economic provisions of our order, be adjusted after the easement and electric line had been moved and plaintiff's appeals had been decided. We denied the motion without prejudice to the ability of plaintiff to file another request for a stay, if its post-trial motion was denied and an appeal was filed. However, we required that any such renewed motion would require evidence reconciling the request for a stay with plaintiff's trial testimony that prompt relocation was critically necessary. (Order, filed August 4, 2010. See N.T., 9/7/2010, 8-9,11-12, and 14-15)[4]

A hearing on plaintiff's post trial motion was convened on September 7, 2010. During the hearing, we heard argument from counsel for both parties. In addition, plaintiff submitted portions of its tariff and case law in support of its argument, raised for the first time in its brief in support of its motion for post-trial relief, that we erred in failing to refer the cost issue to the Pennsylvania Public Utility Commission. At the end of the hearing, we indicated that we would review the case law submitted by plaintiff on the tariff issue, but saw no merit in its other issues. (N.T., 9/7/2010, 9-19) We incorporate our on

4. Plaintiff did not, after this appeal was filed, submit another request for a stay.

record statements from the post-trial motion hearing into this opinion by reference.

On September 10, 2010, we denied plaintiff's motion for post-trial relief. To date, neither party has entered judgment on the order.

On October 6, 2010, plaintiff filed this appeal. In its notice, plaintiff indicated that it was appealing from the order denying its motion for post trial relief.

Given this history, we believe that plaintiff's appeal is procedurally defective. As noted, judgment has not been entered on the verdict. Thus, the appeal is, at best, premature. See *Underwood v. Wind*, 954 A.2d 1199 (Pa. Super. 2008); *Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523 (Pa. Super. 2006). Additionally, but along the same lines, an appeal from an order denying a motion for post-trial relief is not proper. An appeal properly lies from the entry of judgment. See *Fanning v. Davne*, 795 A.2d 388 (Pa. Super. 2002). For these reasons, we believe that the appeal is defective and should be dismissed or quashed.

In the alternative, if plaintiff is found to have properly perfected its appeal and preserved issues for appellate review, we offer the following:

In its appeal statement, plaintiff raises six overlapping assignments of error. In one way or another, all six assignments of error assert that we erred by failing to require that defendant pay the entire cost of relocation before work begins. Reduced to basics, plaintiff's contentions are that we so erred because the cost-sharing provisions of our order were not supported by the facts of the case, the applicable law, or plaintiff's tariff.

As noted, we articulated the reasons for our decision, including the cost-sharing provisions being challenged by plaintiff, during the June 24, 2010 announcement hearing. Portions of our rationale were summarized or reiterated during the September 7, 2010 hearing on plaintiff's motion for post trial relief. For the most part, we believe that the reasoning we expressed on the record during these two hearings is sufficient to address any issues that plaintiff is deemed to have preserved for appellate review and to show that our decision was fully supported by both the facts and the law. (N.T., 6/24/2010, 2-30 and N.T. 9/7/2010) To what we stated on the record, we add only the following:

Plaintiff asserts that the cost-sharing provisions of our order are inconsistent with the grant of permanent injunctive relief. Plaintiff also asserts that our cost-sharing reasoning was "based on the erroneous premise that there was a mining operation on the property when plaintiff was granted its easement." (Plaintiff's 1925(b) statement, paragraph 2) We believe that what plaintiff deems as our "premise" is supported by the evidence. In any case, the referenced finding is not, as implied by plaintiff, the sole or even the primary basis for our cost-sharing determination. Instead, it was but one of several equitable considerations that we weighed in granting the injunctive relief requested by plaintiff, but ordering that the cost of the relocation be shared equally between the parties. Our decision was not, as plaintiff alleges, internally inconsistent; rather, all aspects of our decision were dictated and supported by the equities.

During the announcement hearing, we articulated the facts that led us to grant injunctive relief. In summary:

In 1962, one of defendant's predecessors in interest granted the subject easement to plaintiff. (N.T., 5/26/2009, 9 and Exhibit 1) The electric poles and lines at issue were constructed in 1963. *Id.* at 22.

Defendant's predecessors actively mined and excavated the property within the area encumbered by plaintiff's easement. In addition, the prior owner from whom defendant purchased the property used the land for what defendant's president described as a "stump dump." *Id.* at 94-97.

Defendant acquired the property in 1996. *Id.* at 6-7 and Exhibit 1. Since acquiring the property, defendant significantly expanded the previous mining operations. Specifically, defendant steadily and consistently engaged in mining, excavation, and wood recycling (stump grinding) operations on the property, including operations within the easement. Defendant's mining activity caused extensive changes in grades and elevations within the easement area. A dirt road along which the poles were located, and that plaintiff used to access its electric line, was completely excavated away. Defendant's business operations interfered with plaintiff's access the electric poles and lines located within the easement. *Id.* at 29, 48, 74-75, 90-97 and 103-110.

From the evidence and our view of the property and the poles, it was clear to us that defendant's activities on the property had undermined the integrity of the four electric poles, rendering them unsafe and unstable and difficult if not impossible to access, service, and maintain. In fact, a ground wire had been damaged, but could not be safely repaired. The condition of the poles and lines pose very real

safety concerns for persons on the property and adversely affect the public interest by jeopardizing electric service to approximately 8,500 customers, including private customers and municipal and public safety entities. These facts prompted us to grant permanent injunctive relief and order that the poles and lines be relocated.

However, it was equally clear to us that, despite knowledge of the mining and other activities within the easement, plaintiff took no action to prevent, or even to bring to defendant's attention, the harm about which it complained until the poles and lines were in their current condition. It was plaintiff's inaction and fundamental notions of equity and fairness that led us to order the cost of relocation be shared.

The facts pertaining to plaintiff's inaction are clear from the record. As noted, defendant's predecessors in title actively mined and excavated the property encumbered by the easement and used the land as a "stump dump." *Id.* at 94-97. Defendant's predecessors engaged in excavation and mining activity within plaintiff's easement up to the point of the dirt road along which the four utility poles at issue were located. (*Id.* at 97).

After acquiring the property, defendant steadily and consistently engaged in the substantial mining, excavation, and business activities described above. Defendant's mining and related activities were "open and notorious." Defendant did not, at any time, attempt to hide the activities from plaintiff or prevent plaintiff from entering onto the property or the easement.

Since 1963 when the electric poles and lines were constructed, representatives, employees, and contractors

of plaintiff had regularly been on defendant's property, both before and after defendant acquired title, to conduct scheduled system inspections, to service and maintain the poles and lines, and to read defendant's meter.[5] *Id.* at 24-25, 29, 43-48, 52, 74-75, 98, and 104. Over the years, while on the property, plaintiff's representatives observed the mining and related activities conducted by defendant and its predecessors. *Id.* In 2003, plaintiff's pole inspection contractor reported having trouble accessing the poles and lines due to mining and excavation within the easement area. *Id.* at 23-25 and 48. In short, long before this action was filed, plaintiff knew or should have known of the substantial mining activity and the effect that the activity was having on its poles and lines. Nonetheless, plaintiff did not advise defendant of any problems pertaining to the integrity of the poles, safety considerations, or other related issues, and did not request that defendant stop or limit its activities within the easement, until 2008, and did not commence this action until 2009. *Id.* at 24-25 and 108-109. By the time plaintiff finally addressed its concerns to defendant, the situation was, as a particle matter, irreversible.

It was plaintiff's failure to act that prompted us to require that the parties share equally the cost of relocation. Plaintiff could and should have acted much sooner to address the issues that gave rise to this action, protect

---

5. One of plaintiff's representative testified that a meter reader might not see the mining and excavation activity within the easement area. Based on our view of the premises, we do not necessarily agree with this statement. Nonetheless, even if a reader would not in the ordinary course of a reading be able see all activity within the easement area, any person reading the meter would clearly have observed that a large-scale mining, excavation, and stump grinding operation was occurring on the property, including areas around and near electric poles.

its poles and lines, and enforce its easement rights. For example, as suggested during the announcement hearing, plaintiff could easily have included in the recorded easement language limiting excavation, mining, or earth moving activities around the poles. As mining within the easement continued and expanded over many years, plaintiff could have acted much earlier to investigate and discuss with defendant (and its predecessors) the potential impact of earth-moving activities on the poles, the acceptable parameters of mining activities in and around the poles, and plaintiff's needs regarding access to the poles and lines.[6] At the very latest, such an investigation and discussion should have occurred in 2003 when plaintiff's pole inspection contractor advised that it was having difficulty accessing the poles. However, plaintiff did not take any of these simple, low-cost steps. Instead, it waited until relocation, a substantially more costly remedy, was the only safe and practical option.

Simply, in weighing the facts and equities, we found that plaintiff's inaction did not, as defendant alleged, rise to the level of a complete defense. However, the same facts and equities convinced us that it would be inequitable and unjust to require that defendant pay the entire cost of relocation when plaintiff allowed the problematic mining to continue and did little if anything to protect its poles and easement until it was too late to save them in their current location. We stand firmly by that decision.

Plaintiff also contends that we erred by giving

---

6. Even under plaintiff's version of events and analysis of the evidence, the property had been mined and excavated since at least 1989. Thus, the property had been mined for approximately nineteen years before plaintiff raised any concerns with defendant about the impact of mining activity on the poles.

defendant the option to perform basic grading and vegetation removal at its own expense and the potential to receive a credit for such work. Plaintiff challenges this provision on two grounds: (1) that it was error to afford defendant any opportunity to perform any work on the relocation project because plaintiff is a "public utility" that "must be able to do the work related to setting its poles and lines without any requirement to involve defendant in the project" (plaintiff's 1925(b) statement, paragraph 3); and (2) that the potential credit might result in defendant paying less, and plaintiff paying more, than one-half of the cost of relocation. *Id.* at Paragraphs 1 and 3. Neither aspect of plaintiff's assignment of error has merit.

Plaintiff's assertion that we erred by allowing defendant to perform basic grading and tree work is really a non-issue. In fact, under the facts of this case, it is somewhat surprising.

During the injunction hearings, plaintiff understandably and justifiably took the position that, as a public utility and electricity provider, it alone needed to set the new poles and install the new lines. Plaintiff's position was properly based on safety, liability, and system integrity considerations. Neither this court nor defendant questioned plaintiff's position. However, in the discussions between the parties, defendant offered to perform basic grading and related work on the relocation. Plaintiff did not raise any issue, objection, or concern about defendant performing such work. In fact, plaintiff's final cost estimate did not include earth moving costs because "from day one [defendant]... volunteer[ed] to take care of that piece of the project." (N.T., 1/19/2010,24)

In fashioning our order, we afforded defendant the option of performing basic grading work because we believed that doing so created, to use a colloquialism, a win-win situation. Specifically, we gave defendant the option to perform such work because: 1) defendant is a company with excavation and earth-moving experience, qualifications, and equipment; 2) the work was necessary for the relocation project and mutually beneficial to the parties; 3) allowing defendant to perform such work would reduce defendant's out-of-pocket costs — a result consistent with the equities of the case — without any adverse financial or other consequence to plaintiff; 4) basic earth moving does not implicate the safety, liability, and system integrity considerations that are implicated by installation of poles and lines; 5) there was no adverse impact to plaintiff or its electric lines and poles; and 6) plaintiff had at least tacitly accepted defendant's offer and had raised no objection to defendant performing the earth moving portion of the relocation project.

We did not give defendant carte blanche to perform whatever work he chose. On the contrary, cognizant of the valid concerns raised by plaintiff regarding the integrity of its poles and lines, we made it clear in our order and in our on-record statements that defendant was limited to performing basic grading and vegetation removal work. (Order, filed June 25, 2010, Paragraph 5; N.T., 6/24/2010, 24 and 26-27) In this regard, during the announcement hearing, we explained that we were merely "giving the defendant, if he elects to, the opportunity to trade off his own machine time and his own use for anything that can be done preliminarily" and specifically asked whether the parties had any question about the type of work defendant

was permitted to perform. No questions were raised. (N.T., 6/24/2010, 26-27) Given these circumstances and the equitable considerations discussed above, we do not believe that allowing defendant to perform grading work constituted either an error of law or an abuse of discretion. Similarly, we do not believe that the option given to defendant materially interfered, as plaintiff suggests, with the work of a "public utility."

The second part of plaintiff's challenge arises from a misinterpretation of the cost sharing provisions of our order or, perhaps, illustrates the need for a clarification. Plaintiff apparently believes that we intended to give defendant a credit for grading work performed even if plaintiff does not include the cost of such work its final relocation cost statement. That was not and is not our intent. Rather, we intended that defendant would be entitled to a credit only if defendant performs basic grading work and the cost or value of such work is included in plaintiff's final cost statement. If defendant performs such work, but the cost of the work is not included in the final statement, defendant does not receive a credit. Obviously, if defendant declines to perform grading work, and such work is performed by plaintiff, the cost of the work may be properly included in the final cost statement and defendant will be responsible for half the cost.

In paragraphs four and six of its appeal statement, plaintiff asserts that we erred by allowing defendant to make installment payments, which plaintiff alleges violates its tariff, and by failing to refer the "cost issue" to the Pennsylvania Public Utility Commission ("PUC"). However, we believe that plaintiff has waived these issues. In the alternative, the issues are without merit.

Pa R.C.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. It is well settled that, if an issue has not been raised in a post-trial motion, it is waived for appeal purposes. See *Hysong v. Lewicki,* 931 A.2d 63 (Pa. Cmwlth. 2007) (and cases cited therein); *Lenhart v. Cigna Companies*, 824 A.2d 1193 (Pa. Super. 2003) (same). Here, plaintiff did not plead its jurisdictional assertion and did not raise the PUC/tariff issues in its post trial motion. Indeed, as plaintiff's own filings point out, the issues were raised for the first time in plaintiff's post trial motion brief. (Plaintiff's brief in support of post verdict motions, p. 3; plaintiff's 1925(b) statement, paragraph 4) Therefore, we believe that the PUC/tariff issues have been waived.

Plaintiff may argue that its PUC/tariff issues were not implicated until after the injunction order was filed. Any such argument would be disingenuous. When plaintiff's post-trial arguments and notice of appeal are read together, it is clear that plaintiff is taking the position that the PUC, not this court, has jurisdiction to approve the cost of relocation and to decide the cost issue. If that proposition is correct, then the PUC's jurisdiction was implicated when plaintiff's equity complaint was filed. Under this scenario, plaintiff should have pleaded its jurisdictional assertion, brought the issues to the attention of the court during the injunction proceedings, or taken steps to have the PUC review the relocation cost calculation while the request for injunction was being litigated. Having observed the demeanor of plaintiff's witnesses and reviewed its arguments and litigation conduct, we highly doubt that plaintiff would have requested that the PUC review its cost calculation or exercise jurisdiction over the cost

issue had we ordered defendant to pay the entire cost of relocation. This issue is simply an after-the-fact attempt to re-litigate a cost sharing scheme with which plaintiff is unhappy. In any case, plaintiff's fall-back jurisdictional argument does not excuse its failure to specifically raise the issues in its post trial motion.

In the alternative, plaintiff's PUC/tariff issues are without merit. In its post trial motion brief, plaintiff cited a number of appellate cases in support of basic propositions regarding public utilities and the jurisdiction and specialized knowledge of the PUC. (Plaintiff's brief in support of post verdict motions, 11-13) We do not take issue with the general propositions cited by plaintiff. However, neither the cases nor the general propositions conclusorily cited by plaintiff, nor any authority that we found, mandates that a court of equity refrain from awarding appropriate relief based on the acts and omissions of the parties and the equities of the case simply because the public utility which commenced the action is a regulated entity with a filed tariff.

In its post trial motion brief, plaintiff cited *Shedlosky v. Pennsylvania Electric Company*, 7475 Civil 2008 (C.P. Cumberland, filed May 12, 2009)[7], as a case that specifically addressed the PUC/tariff issues. However, the decision in *Shedlosky* does not support the argument raised by plaintiff. On the contrary, *Shedlosky* demonstrates that, in a proper case, a court may in fact allocate the cost of relocation between a public utility and a landowner whose property is encumbered by a utility easement even

_____

7. A copy of *Shedlosky* was submitted by plaintiff as Exhibit 2 to the hearing held on September 7, 2010. (N.T., 9/7/2010, Exhibit 2)

if the utility is governed by a tariff.

In *Shedlosky*, the defendant electric company entered into a right of way agreement with plaintiff's predecessor in title. Pursuant to the agreement, the electric company was granted permission to install electric poles and lines on the property. The agreement provided that, if future conditions required, the electric company would move the poles and lines to a location agreeable to the land owner. The plaintiffs asked that the electric company relocate its electric facilities. The electric company refused to relocate the poles and lines unless the plaintiffs paid for the relocation in advance. The plaintiffs paid the electric company under protest.

Initially, the plaintiffs instituted an action against the electric company before the PUC. The commission "concluded that it did not have jurisdiction to determine allocation of the relocation costs because that requires interpretation of the provisions of the right-of-way agreement which takes precedent over the tariff for which jurisdiction lays in a court of common pleas. The commission did, as a matter of judicial economy, find that $53,284.92 was an appropriate charge under [the electric company's] tariff." *Id.* at 2.

The plaintiffs then commenced a breach of contract action against the electric company in the Court of Common Pleas of Cumberland County. The electric company filed preliminary objections demurring to the plaintiffs' complaint. Like plaintiff in this case, the electric company argued that its tariff governed the rate pertaining to relocation and barred plaintiffs' claim. The electric company also argued that the PUC's determination that

the amount charged was appropriate under the electric company's tariff was binding on the trial court and precluded the plaintiff's action. The court rejected the electric company's assertions and overruled its objections. In doing so, the court stated:

> The Public Utility Commission did not decide that defendant appropriately charged plaintiffs the cost of relocation. To the contrary, the Commission refused to make such a determination on the basis that jurisdiction to determine allocation of the relocation cost under the provisions of the right-of-way agreement lays in a court of common pleas. The Commission, as a matter of judicial economy if a court of common pleas would decide that the matter should be adjudicated before it, determined that $53,284.92 was an appropriate charge under defendant's tariff. *Accordingly, the issue of the allocation of costs is properly before this court. Id.* at 3 (emphasis added).

This holding does not support the proposition advanced by plaintiff in this case. On the contrary, when the *Shedlosky* decision is viewed in its entirety and in context, it is clear that the court's holding was that, in a proper case, a court and not the PUC has jurisdiction to allocate the cost of relocation between a public utility and a landowner even if the utility is governed by a tariff, the utility believes that its tariff requires the landowner to pay, or the PUC has issued an advisory ruling that the relocation cost is appropriate under the tariff.[8]

This case is a proper case for allocation by a court.

---

8. Even if the decision in *Shedlosky* were to be interpreted differently, it is of course not binding on either this court or the Superior Court.

In *Shedlosky*, the court had jurisdiction to allocate utility relocation costs because the decision required interpretation of a recorded right-of-way agreement. Here, we obtained jurisdiction because plaintiff invoked our jurisdiction by filing an equity action seeking a mandatory injunction requiring relocation of its electric poles and lines. Having invoked the equity jurisdiction of this court, plaintiff, regardless of its public utility status, subjected itself to equitable principles and the formulation of an equitable remedy. As previously stated, there is simply no authority which mandates that a court of equity refrain from awarding appropriate relief based on the acts and omissions of the parties and the equities of the case simply because the public utility which commenced the action is a regulated entity with a filed tariff.

For these reasons, we believe that plaintiff's appeal should be dismissed or quashed. In the alternative, for the reasons recited during the announcement hearing and the hearing on plaintiff's motion for post-trial relief, as well as those recited in this opinion, we believe that the cost-sharing provisions of our order should be affirmed.