J-A28003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MAGASKIE, DANIEL AND MAGASKIE, NICOLE, H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| WAWA, INC. | |
| Appellee | No. 424 EDA 2015 |

Appeal from the Judgment Entered March 20, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 130901343

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.:              **FILED DECEMBER 10, 2015**

Appellants, Daniel Magaskie and Nicole Magaskie, H/W, appeal from the judgment entered in the Philadelphia County Court of Commons Pleas, following a jury verdict in favor of Appellee, Wawa, Inc. ("Wawa"), in this slip-and-fall case.  We affirm.

The trial court opinion sets forth the relevant facts of this case as follows:

> On October 29, 2011, an unseasonably early snowstorm hit the Schwenksville area, causing snow to accumulate on [Appellant] Mr. Magaskie's vehicle which was parked at his home.  The following morning, [Appellant] Mr. Magaskie, a private investigator by trade, was on his way to work when he stopped at [Wawa's] convenience store/gas station, located at 4121 Skippack Pike, Schwenksville, Pennsylvania.  After arriving at the Schwenksville Wawa, [Appellant] Mr. Magaskie parked in front of the gas pumps, got out of his car, and proceeded to brush the

aforementioned snow off his car and on to the ground near the gas pumps. [Appellant] Mr. Magaskie walked on and around the area where he had thrown the snow, and then proceeded to walk towards the Wawa, at which point he slipped and fell in the parking lot. Richard Morton, the Wawa's manager, then came out to assist [Appellant] Mr. Magaskie and to survey the area. This entire incident, from start to finish, was captured on video by the Schwenksville Wawa's surveillance system.

[Appellant] Mr. Magaskie suffered injuries to his left knee as a result of his fall, necessitating arthroscopic surgery to remove part of the meniscus, as well as physical therapy. [Appellant] Mr. Magaskie claimed that this knee injury was affecting his quality of life, including intermittent pain and difficulty walking and in getting up from a seated position.

Subsequently, on May 9, 2013, [Appellant] Mr. Magaskie was involved in an unrelated car accident during which his vehicle was allegedly rear-ended by a third party. Thereafter, [Appellant] Mr. Magaskie sought treatment from a number of doctors, including Dr. Kenneth Izzo, for issues related to his neck and lower back stemming from the car accident. Dr. Izzo first met with [Appellant] Mr. Magaskie in May 2013 wherein [Appellant] Mr. Magaskie advised Dr. Izzo that he was having difficulty standing up from the seated position due to lower back pain. Dr. Izzo also stated that [Appellant] Mr. Magaskie's first steps were "slow and antalgic"—again as a result of [Appellant] Mr. Magaskie's back pain caused by the car accident. [Appellant] Mr. Magaskie told Dr. Izzo that his car accident had limited him in many of his life activities, including driving.

(Trial Court Opinion, filed March 26, 2015, at 1-3) (internal citations to record omitted). Procedurally, Appellants filed a complaint in negligence against Wawa on September 12, 2013.[1] Following a two-day trial, a jury

---

[1] Appellant Nicole Magaskie brought a claim for loss of consortium.

returned a verdict in favor of Wawa, finding that Wawa had not been negligent. On January 22, 2015, Appellants filed a timely post-trial motion, which the court denied on January 28, 2015. Appellants filed a premature notice of appeal on February 3, 2015. On February 11, 2015, the court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants filed their Rule 1925(b) statement on February 16, 2015. On March 12, 2015, this Court entered a *per curiam* order directing Appellants to *praecipe* for entry of final judgment. On March 20, 2015, Appellants filed a *praecipe* for entry of final judgment on the verdict in favor of Wawa, which the prothonotary entered that day.[2]

Appellants raise two issues for our review, which we have reordered for purposes of disposition:

> DID THE [TRIAL] COURT COMMIT PREJUDICIAL, REVERSIBLE ERROR WHEN IT REFUSED TO INSTRUCT THE JURY ABOUT THE ISOLATED PATCH [O]F ICE EXCEPTION TO THE HILLS AND RIDGES DOCTRINE?

_____

[2] Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. **See Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511 (Pa.Super. 1995) (*en banc*). Nevertheless, a final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. **Drum v. Shaull Equipment and Supply, Co.**, 787 A.2d 1050 (Pa.Super. 2001), *appeal denied*, 569 Pa. 693, 803 A.2d 735 (2002). Appellants' notice of appeal was premature when filed, but it related forward to March 20, 2015, the date the final judgment was entered. **See** Pa.R.A.P. 905(a)(5) (stating: "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"). Hence, no jurisdictional impediments impede our review.

> DID THE [TRIAL] COURT COMMIT PREJUDICIAL, REVERSIBLE ERROR WHEN IT ALLOWED DEFENSE COUNSEL TO CROSS EXAMINE [APPELLANT MR. MAGASKIE] BY READING STATEMENTS, OBSERVATIONS, AND CONCLUSIONS (HEARSAY) WRITTEN BY DR. IZZO WHEN NONE OF THOSE STATEMENTS, OBSERVATIONS OR CONCLUSIONS QUALIFIED AS EXCEPTIONS TO HEARSAY?

(Appellants' Brief at 4).

In their first issue, Appellants argue the evidence showed Appellant Mr. Magaskie slipped on a patch of ice in the Wawa parking lot, and that there were no "generally slippery conditions" in the lot. Appellants contend they were entitled to a jury instruction on the "isolated patch of ice" exception to the "hills and ridges" doctrine.[3] Appellants conclude the trial court abused its discretion when it denied Appellants' requested instruction. We disagree.

> Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case.

> Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found

_____

[3] Appellants requested the following instruction: "In Pennsylvania, a store owner is liable if a customer slips and falls on a 'specific, localized, isolated patch of ice' if the store owner knew or should have known about that patch of ice. If you find that [Appellant] Dan Magaskie slipped on a specific, localized, isolated patch of ice, and if you find that Wawa knew or should have known about that ice, you must find that Wawa was negligent for failing to make their parking lot safe and for failing to warn [Appellant] Dan Magaskie of the slippery condition." *See* Appellants' Brief at 18-19.

adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error. In reviewing a trial court's charge to the jury we must look to the charge in its entirety.

***Underwood ex rel. Underwood v. Wind***, 954 A.2d 1199 (Pa.Super. 2008) (citations omitted).

To prevail in a negligence action, a plaintiff must establish the defendant "owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." ***Merlini ex rel. Merlini v. Gallitzin Water Authority***, 602 Pa. 346, 354, 980 A.2d 502, 506 (2009). A land possessor is liable for physical harm caused to an invitee only if the following conditions are satisfied:

[The land possessor] knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, he should expect that the invitee[s] will not realize it or will fail to protect themselves against it, and the party fails to exercise reasonable care to protect the invitees against the danger.

***Estate of Swift v. Northeastern Hosp. of Philadelphia***, 690 A.2d 719, 722 (Pa.Super. 1997), *appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997) (citation omitted). The "mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence." ***Myers***

*v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa.Super. 1992) (*en banc*), *appeal denied*, 533 Pa. 625, 620 A.2d 491 (1993). An **invitee** must present evidence proving "either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." **Estate of Swift, supra** at 722. What constitutes constructive notice depends on the circumstances of the case, but one of the most important factors to consider is the time that elapsed between the origin of the condition and the accident. **Neve v. Insalaco's**, 771 A.2d 786, 791 (Pa.Super. 2001). The invitee need not produce evidence on how long the alleged condition existed if the condition is of a type with an "inherently sustained duration" (as opposed to something transitory such as a spill), and a witness saw the condition immediately before or after the accident. **Id.**

This Court has summarized "the doctrine of hills and ridges" as follows:

> This doctrine provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition. In order to recover for a fall on an ice- or snow-covered sidewalk, a plaintiff must prove
>
> > (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice,

either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Gilligan v. Villanova University*, 584 A.2d 1005, 1007 (Pa.Super. 1991) (citations omitted).

An exception to the "hills and ridges" doctrine exists, however, where the plaintiff can prove "the hazard is not the result of a general slippery condition prevailing in the community, but of a localized patch of ice." *Bacsick v. Barnes*, 341 A.2d 157, 160 (Pa.Super. 1975) (stating proof of hills and ridges was not required where plaintiffs produced evidence that snowbank on defendants' property was of artificial origin, *i.e.*, created as a result of street plowing). Under those circumstances, "it is comparatively easy for a property owner to take the necessary steps to alleviate the condition, while at the same time considerably more difficult for the pedestrian to avoid it even exercising the utmost care." *Williams v. Shultz*, 429 Pa. 429, 433, 240 A.2d 812, 814 (1968). When proof of hills and ridges is not required, a plaintiff still must prove that the defendant landowner had actual or constructive notice of the hazardous condition. *Bacsick, supra*.

Instantly, on October 29, 2011, a snowstorm occurred in the Schwenksville area. The storm continued into the evening. At approximately 7:00 a.m. on the following morning, Appellant Mr. Magaskie cleared snow and slush off his car before driving to the Wawa. After he

exited his car in the Wawa fuel pump area, he knocked more snow off the passenger side of the vehicle. Appellant Mr. Magaskie testified that there was already snow on the ground. He claims he then slipped on a patch of ice as he walked into the parking lot toward the store.[4] Appellant Mr. Magaskie testified that other areas of the lot where he walked were not slippery. Nevertheless, the evidence of a snowstorm that had ended only hours before the incident, and Appellant Mr. Magaskie's testimony that there was snow on his car and on the ground outside the Wawa store, established the existence of generally slippery conditions in the community. **See Bacsick, supra**. Thus, the court properly instructed the jury that Appellants had to prove the alleged ice had accumulated in ridges and elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians. Given the generally slippery conditions in the community, Appellants were not entitled to an additional instruction on the "isolated patch of ice" exception. **See Gilligan, supra**; **Bacsick, supra**.

Moreover, Appellants failed to produce evidence of a required element of their negligence claim, namely, that Wawa had actual or constructive notice of the alleged patch of ice that caused Appellant Mr. Magaskie to slip

---

[4] At trial, Appellant Mr. Magaskie testified that he slipped on a patch of flat, smooth black ice. Nevertheless, on cross-examination, he admitted he had told one of his doctors that he slipped on snow-covered ice. Additionally, Wawa's claims adjuster testified that Appellant Mr. Magaskie had described the ice as "white" and "shiny."

and fall. Cenova, a company responsible for snow and ice management in Wawa's parking lot, was at the store the night before the incident. Wawa's store manager stated he did not see any ice in the parking lot on the morning of the incident before Appellant Mr. Magaskie arrived. Appellant Mr. Magaskie similarly testified that he did not see any ice on the pavement before he fell. No witness testified to seeing the alleged patch of ice prior to Appellant's fall. Further, Appellants offered no evidence regarding the length of time the alleged ice patch had been in the parking lot. Likewise, no evidence suggested a history of ice forming in that particular location due to any kind of irregularity. The record is devoid of evidence that the ice, if it even existed, was visible or had a source other than the very recent snowstorm. Therefore, regardless of which jury instruction the court issued, no jury could have found that Wawa had actual or constructive notice of the alleged hazardous condition sufficient to impose liability. **See Neve, supra**; **Estate of Swift, supra**.

In their second issue, Appellants argue Dr. Izzo's letters reporting Appellant Mr. Magaskie's medical symptoms were inadmissible hearsay. Appellants contend the hearsay exception—for statements made for the purpose of medical diagnosis or treatment—is inapplicable because Dr. Izzo, not Appellant Mr. Magaskie, made the statements in the letters. Appellants assert they were prejudiced by the court's decision to allow Wawa to use the statements to impeach Appellant Mr. Magaskie's credibility regarding

causation, which Appellants claim was crucial in this case because an issue of fact existed as to whether Appellant Mr. Magaskie slipped on ice or something else. Appellants conclude this Court should grant them a new trial. We disagree.

> Evidentiary rulings are committed to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law. In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party.

*Whitaker v. Frankford Hosp. of City of Philadelphia*, 984 A.2d 512, 522 (Pa.Super. 2009). "An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Hart v. W.H. Stewart, Inc.*, 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989) (holding trial court's evidentiary ruling on damages, in case where jury had found for defendant on issue of liability, was harmless and did not entitle plaintiff to new trial).

Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Pennsylvania Rule of Evidence 803(4) sets forth the hearsay exception regarding statements made for the purpose of medical diagnosis or treatment as follows:

> **Rule 803. Exceptions to the Rule Against Hearsay— Regardless of Whether the Declarant Is Available as a Witness**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

\*     \*     \*

**(4) Statement Made for Medical Diagnosis or Treatment.** A statement that:

(A)    is made for—and is reasonably pertinent to—medical treatment or diagnosis in contemplation of treatment; and

(B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4). "The medical treatment exception to the hearsay rule provides that testimony repeating out-of-court statements which were made for purposes of receiving medical treatment are admissible as substantive evidence." ***Estate of Swift, supra*** at 721. A statement qualifies for the exception when two requirements are met: (1) the declarant must make the statement for the purpose of receiving medical treatment, *e.g.*, statements relating to the cause of the injury; and (2) the statement must be necessary and proper for diagnosis and treatment. ***Id***.

Additionally, Pennsylvania Rule of Evidence 613 provides in relevant part:

**Rule 613. Witness's Prior Inconsistent Statement to Impeach; Witness's Prior Consistent Statement to Rehabilitate**

- 11 -

**(a) Witness's Prior Inconsistent Statement to Impeach.** A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request the statement or contents must be shown or disclosed to an adverse party's attorney.

\* \* \*

Pa.R.E. 613(a).

> A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his trial testimony. Mere dissimilarities or omissions in prior statements…do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements. An inconsistent statement can be admissible to impeach a witness' credibility. However, it must be established that the witness, in fact, made the allegedly inconsistent statement. [A] summary of a witness' statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own.

*McManamon v. Washko*, 906 A.2d 1259, 1268 (Pa.Super. 2006), *appeal denied*, 591 Pa. 736, 921 A.2d 497 (2007) (internal citations and quotation marks omitted).

Instantly, Appellant Mr. Magaskie fell in the Wawa parking lot in October 2011. In May 2013, he was involved in an unrelated car accident. At trial, Appellant Mr. Magaskie explained that the 2011 Wawa incident had resulted in an injury to his left leg, which made it difficult for him to walk or to stand/sit for extended periods without pain. On cross-examination, Appellant Mr. Magaskie testified that he was seeing Dr. Kenneth Izzo for

back pain stemming from the 2013 car accident. Appellant Mr. Magaskie

denied that his back pain had also caused him to have problems walking.

Over Appellants' objection, Wawa's counsel then referred to statements from

letters written by Dr. Izzo as follows:[5]

> **Q.** This is a letter dated [May 22, 2014] from Dr. Izzo. …
> He actually copies your attorney on it, Mr. Richard Senker.
> And it talks about you being involved in a motor vehicle
> accident on [May 9, 2013,] which would be after the Wawa
> accident, right?
>
> **A.** Yes.
>
> **Q.** Is that true?
>
> **A.** Yes.
>
> **Q.** Right in here [Dr. Izzo] says, "The patient remains
> significantly obese, has some difficult[y] getting up from a
> seated position due to back pain. His initial steps are slow
> and antalgic, also due to back pain."
>
> **A.** I have never seen that letter. I didn't know he said
> that.
>
> \* \* \*
>
> **Q.** I have another report from [Dr. Izzo] dated December
> 5, 2013. It gives the same history. It says that you were
> in the car accident. This report also copies your attorney,
> Mr. Senker, in Plymouth Meeting. … [I]t says, "The
> patient has difficulty getting up from a seated position
> primarily due to low back pain. His few steps are
> somewhat short, antalgic, and labored. This was also felt

_____

[5] Wawa did not introduce the letters themselves as exhibits. The record
does not disclose the purpose or intended recipient(s) of the letters, other
than counsel for Wawa's indication that Appellants' counsel was copied on
them.

to be due to his low back pain." Are you aware that he said that?

**A.** No, I'm not.

**Q.** You didn't hurt your back in the auto accident, right?

**A.** No. But I didn't say that my back problems, you know, getting up from a seated position, I never said that was because of my leg—my back.

**Q.** Well you told the jury that you are having problems walking around from the Wawa accident?

**A.** Once I'm up on my feet.

**Q.** You didn't reference any problems from this other accident, did you?

**A.** I didn't know to reference it.

(N.T. Trial, 1/14/15, at 141-43).[6] Appellant Mr. Magaskie further testified that the Wawa accident affected his ability to sit in his car for any length of time required to drive or to conduct surveillance as part of his job duties. Wawa's counsel then questioned Appellant Mr. Magaskie regarding the effect of the 2013 car accident on his driving abilities as follows:

**Q.** Sir, did this accident in May of [20]13, the next accident, have any effect on your driving abilities?

**A.** I don't understand the question.

---

[6] The date on the cover page of the transcript is incorrect. Although it states "January 15, 2015," the first day of trial actually took place on January 14, 2015. Likewise, the transcript for the second day of trial should be dated January 15, 2015. All citations to the notes of testimony refer to the actual dates the testimony was given.

**Q.** I want to know if this accident in May of [20]13 also adversely affected your driving, or your back was hurt because of your driving, or your driving was affected because of your back?

**A.** I really don't know how to answer that.

**Q.** Let me see if I can refresh your recollection. This is again Dr. Izzo, another report of September 10, 2013. Again, your attorney is copied on it, and he refers to your car accident....

\* \* \*

**Q.** "I reviewed with [Appellant Mr. Magaskie] his situation. He has definitely experienced increased pain since the most recent motor vehicle accident of [May 9, 2013]. He states he is limited in many of his activities including driving." Did you tell Dr. Izzo that?

**A.** Your Honor, I need some help here. I don't know [or] understand what's going on.

**THE COURT:** I'm not here to help you sir. I can't help you.

**Q.** Sir, did you tell Dr. Izzo that you were limited in many of your activities including driving?

**A.** I guess so.

*Id.* at 144-46. The trial court allowed Wawa to use the statements in Dr. Izzo's reports under two theories: (1) the "medical treatment" hearsay exception, and (2) for impeachment purposes.

Dr. Izzo's reports repeated or alluded to statements made by Appellant Mr. Magaskie. Those statements were made for the purpose of receiving medical treatment for injuries Appellant Mr. Magaskie sustained in the car accident. In one report, Dr. Izzo explicitly noted: "[Appellant Mr. Magaskie]

- 15 -

states he is limited in many of his activities including driving." In the other reports, Dr. Izzo describes Appellant Mr. Magaskie's subjective feelings of pain—information that could only have come from Appellant Mr. Magaskie. Dr. Izzo's statements relaying what Appellant told him, however, were out-of-court declarations, not made for the purpose of receiving medical treatment.[7] Further, with respect to the impeachment theory, Appellant Mr. Magaskie did not adopt the statements in Dr. Izzo's reports as his own, with the possible exception of Appellant Mr. Magaskie's statement to Dr. Izzo that the car accident had limited his driving abilities. That statement did not contradict any of Appellant Mr. Magaskie's trial testimony, in any event.

Nevertheless, to the extent the statements in Dr. Izzo's letters constituted hearsay, the use of those statements at trial was not reversible error. The statements went to the question of damages, which the jury did not reach because it found in Wawa's favor on the issue of liability. Moreover, Wawa's counsel had already called Appellant Mr. Magaskie's credibility into question by, *inter alia*, introducing Appellant Mr. Magaskie's various inconsistent descriptions of the alleged patch of ice. Any additional effect on Appellant's credibility was likely negligible.

More importantly, Appellants failed to produce evidence sufficient to support a verdict finding Wawa negligent. Appellants could not satisfy the

---

[7] Additionally, Wawa made no attempt to admit Dr. Izzo's reports under the "business records" exception to the hearsay rule. *See* Pa.R.E. 803(6).

requirements of the "hills and ridges" doctrine, on which the jury was properly instructed, where Appellant Mr. Magaskie described the texture of the alleged ice as flat and smooth. *See Gilligan, supra*. Further, Appellants failed to present any evidence that Wawa had actual or constructive notice of the alleged patch of ice. *See Estate of Swift, supra*. Therefore, any error in the use of the alleged hearsay did not warrant a new trial. *See Hart, supra*; *Whitaker, supra*. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2015