Racquel **UNDERWOOD**, A Minor By and Through Her Mother and Natural Guardian Catherine **UNDERWOOD**, **Shauna McInnes, and Andrew Dash**

v.

Dana **WIND**, An Individual and Sherry Kasprzyk, An Individual.

**Appeal of Dana Wind.**

**Appeal of Sherry Kasprzyk.**

Superior Court of Pennsylvania.

Argued March 20, 2008.
Filed July 18, 2008.

Scott A. Millhouse, Pittsburgh, for Wind, appellant.

John A. Robb, Jr., Pittsburgh, for Kasprzyk, appellant.

Rudolph L. Massa, Pittsburgh, for Dash, appellee.

BEFORE: BENDER, BOWES and TAMILIA, JJ.

OPINION BY TAMILIA J.:

¶ 1 On November 23, 2003, two pit bull dogs owned by appellant Dana Wind, escaped from the home she rented from her

aunt, appellant Sherry Kasprzyk, and attacked the minor child, appellee Racquel Underwood, as well as the good Samaritans, appellees Shauna McInnes and Andrew Dash, who attempted to rescue the child. A jury entered awards of $65,000, $85,000, and $80,000, respectively, in favor of the appellees. On August 8, 2007, appellants' post-trial motions were denied, and appellees' request for delay damages was granted: Underwood was awarded an additional $8,724.25; McInnes was awarded $11,408.62; and Dash was awarded $10,737.53. On August 17, 2007, an aggregate judgment of $260,870.40 was entered in favor of appellees, that amount representing the total of the appellees' awards and delay damages.[1]

¶ 2 On August 14, 2007, appellant Kasprzyk filed a premature notice of appeal, but this Court nevertheless will address the appeal because judgment on the verdict has since been entered on the record. *See Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523 (Pa.Super.2006). Appellant Wind filed her timely notice of appeal on August 28, 2007. These appeals were listed and heard consecutively by this Court, and will be resolved in this one Opinion, beginning with a recitation of the facts surrounding the dog attack.

¶ 3 According to the evidence of record, Kasprzyk entered into a lease agreement with her niece, Wind, in April, 2003, for the rental of an apartment in a two-apartment house[2] located on Sigel Street in Pittsburgh's North Side, located 15 minutes from Kasprzyk's residence. Immediately prior to this agreement, between September, 2002, and April, 2003, Wind

---

1. Appellee Underwood was awarded a total of $73,724.25; McInnes was awarded $96,408.62; and Dash was awarded $90,737.53. These amounts add up to the aggregate judgment entered on the record on August 17, 2007.

2. The home included two apartments, one rented by tenant/appellant Wind, and the other by her friend.

had lived rent-free in another home owned by Kasprzyk, located on Marvista Street, also in the North Side of Pittsburgh. The terms of the Sigel Street month-to-month lease included a monthly payment owed of $100, and clauses stating, *inter alia*, that no animals were allowed absent the express, written consent of the lessor, and should either party wish to terminate the lease, he or she could do so with 30 days written notice. N.T., 1/19–23/2007, at 33–35. At trial, landlord Kasprzyk testified that she also had a verbal agreement with tenant Wind that Wind's two pit bulls, weighing approximately 70 and 90 pounds, had caused property damage at the Marvista Street residence and would not reside at the Sigel Street home. *Id.* at 36–38. Wind testified, however, that her aunt allowed her one week from when she moved to Sigel Street in April 2003, to place the dogs with other owners; Wind failed to do so, however, and likewise admitted that she failed to advise her aunt that the dogs were indeed living at the Sigel Street address from April 2003, until the time of the attack, in November, 2003. *Id.* at 68, 118. Wind testified that she took the two pit bulls with her when she moved into the Sigel Street residence, despite knowing that her aunt, lessor Kasprzyk, disapproved. *Id.* at 68, 70. Wind admitted that two months prior to the attack in question, the unlicensed dogs, who routinely were either in the house or chained in the back yard, had escaped the house through the front door, due to a faulty latch. *Id.* at 71, 107–108. Though Wind stated that she tried to fix this latch, her efforts were unsuccessful and, on November 20, 2003, the dogs escaped through this same door once again. *Id.* at 73. It was Kasprzyk's testimony that she was unaware the dogs were living at the Sigel Street rental from the time Wind moved there, in April of 2003, until the time of the attack, in November of 2003, and, in fact, Wind had told her the dogs were gone. *Id.* at 68, 315–316, 319.

¶ 4 On the day of the attack, according to the testimony of the child Underwood, she was walking down the street, after playing a pick-up game of football with her friends, when first one dog and then the other attacked her and knocked her to the ground, both biting her and breaking the skin. *Id.* at 133–137. While she lie on the ground, a car approached and stopped. Appellees McInnes and Dash exited the car and tried to help Underwood, and both were attacked by the dogs. *Id.* at 137, 181–185, 241–247. With the dogs' focus on McInnes and Dash, Underwood was able to break free and run home where her mother called the paramedics. McInnes testified that as she and Dash tried to escape the vicious attack and get back into their vehicle, owner Wind arrived, followed by the paramedics. *Id.* at 187–190.

¶ 5 There are two appeals before this Court, and we elect to begin by addressing the issues raised by appellant Wind, the tenant who owned the dogs that escaped from the house and attacked the appellees. Both of Wind's issues challenge the jury charge. Wind argues the trial court erred (1) "by instructing the jury that [she] was negligent per se because her dogs escaped from her property and were running free[;]" and (2) "by instructing the jury that the dogs' actions *in this incident* could be considered by the jury in determining the dogs' dangerous propensities." Wind's brief at 6 (emphasis in original).

¶ 6 Wind argues the court's instruction stating that she was negligent *per se* because her dogs escaped from the house precluded the jury from having the opportunity to consider whether her explanation for the dogs' escape was reasonable and she therefore was not negligent and liable for the appellees' injuries. "[T]he jury should have been instructed that the ap-

pellant was negligent only if they decided that her explanation for her dogs running free at the time of the accident was not reasonable." *Id.* at 12. Wind relies on *Villaume v. Kaufman,* 379 Pa.Super. 561, 550 A.2d 793 (1988), and cites the following portion of the charge in support of her argument the trial court erred by "instruct[ing] the jury that [she] was negligent per se because her dogs had escaped from her home and were running free at the time of the incident." Wind's brief at 11. It is Wind's position the court erred by instructing in accordance with *Miller v. Hurst,* 302 Pa.Super. 235, 448 A.2d 614 (1982), and that the jury should have been instructed in accordance with *Villaume, supra.*

¶ 7 In support of her argument, appellant Wind refers this Court to pages 11 through 13 of the jury charge which, for the sake of clarity, is set forth below.

Now, I told you about going from the general to the particular. Now we're going to get very particular. The first thing you need to understand is an unexcused violation of the dog law is negligence per se. Per se is Latin, and it means by itself or in itself.

Negligence per se means if a law or statute is violated, that violation by itself or in itself is negligence.

Now, even with negligence per se, you still have to prove[,] or the Plaintiffs have to prove[,] that the negligence was a factual cause of the injuries suffered. But in this case—well, dealing with that dog law, a landlord is liable for injuries caused by animals owned and maintained by a tenant when the landlord knew or should have known of the presence of the dangerous animal and when the landlord had a right to control or remove the animal by retaking possession of the premises.

The dangerous propensities of an animal may be established by a single incident of an attack on a human being. You may determine prior knowledge of the possible dangerous propensities of an animal by direct and/or circumstantial evidence.

In order to prove the vicious propensities of an animal, actual notice is not necessary. It is sufficient if one knew or should have known that the animal was a probable cause of harm.

Now, I told you that the law is a violation—an unexcused violation of the dog law is negligence per se. And the dog law talks about dogs getting out. It used to be referred to as dogs running at large. Now it's a different thing, but it's the same concept. They need to be confined or on a leash or a chain. And it also defines what dangers dogs are and the negligence of keeping a dangerous dog.

Pennsylvania's dog law, which is a state law in effect at the time this harm occurred, provided in part that it is unlawful for the owner or keeper of any dog to fail to keep at all times such dog confined within the premises of the owner. This state law dictates the duty of care required of someone in the same situation as Defendants. If you find that there was a violation of this state law, you must find Defendant negligent as a matter of law.

However, before you answer that, you need to determine whether the negligence was a factual cause of the injuries. Now, that's with respect to the dog getting out.

The Pennsylvania dog law, which is a state law in effect at the time this harm occurred, provided in part that when a dog owner's dog has inflicted severe injury on a human being without provocation, the dangerous propensities of the

animal are established by a single incident of attacking the human being. This state law dictates the duty of care required of someone in the same situation as the Defendants.

Pennsylvania's dog law, a state law in effect at the time, provides in part that the owner or keeper of any dog that aggressively attacks and causes severe injury or death of any human through the intentional, reckless or negligent conduct of the dog's owner has violated the Pennsylvania dog law. This state law dictates the duty of care required of someone in the same situation as the Defendants.

And again, in all three of those instances you need to find that the fact— that that violation was a factual cause of the injury.

Now, I talked to you about—in the law remember I told you it says an unexcused violation? An excuse means a reasonable explanation for why the act occurred acceptable to a reasonable person under all the facts and circumstances in the case. And it's the burden of the person offering that excuse to prove it by a preponderance of the evidence.

N.T., 1/23/07, at 11–13.

 ¶ 8 In addressing this challenge to the jury charge we are guided by the standard of review set forth in *Gorman v. Costello,* 929 A.2d 1208 (Pa.Super.2007).

Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case.

Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue.

A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error. In reviewing a trial court's charge to the jury we must look to the charge in its entirety.

*Id.* at 1212, citing *Quinby v. Plumsteadville Family Practice, Inc.,* 589 Pa. 183, 197, 907 A.2d 1061, 1069–1070 (2006).

¶ 9 *Miller,* the case after which Wind asserts the trial court fashioned its instructions on the tenant's liability for damages, held that an *unexcused* violation of the Dog Law is negligence *per se. Miller, supra* at 618. Subsequent case law has expanded and clarified Pennsylvania's position, stating, "the Commonwealth does not impose absolute liability on the owner for dog attacks. As we have stated in previous cases: 'we are convinced that proof of negligence, in contrast to holding one absolutely liable, is the vehicle by which accountability for injury sustained because of a dog bite is to be established.'" *McCloud v. McLaughlin,* 837 A.2d 541, 544 (Pa.Super.2003), *quoting Deardorff v. Burger,* 414 Pa.Super. 45, 606 A.2d 489, 493 (1992), *appeal denied* 532 Pa. 655, 615 A.2d 1312 (1992).

 ¶ 10 While the court's jury charge may have been inarticulate at times, we find the charge, when considered in its entirety, *with regard to this specific argument,* was legally sound and adequately informed the jury of the law of liability as it applies to dog owners whose dogs escape and harm someone. The crux of the instruction advised the jurors to consider whether Wind's explanation for the dogs' escape was reasonable, or whether their escape and the subsequent harm they caused were due to Wind's negligence.

The court's charge was in accordance with *Villaume,* relied upon by appellant. The *Villaume* Court explained that the *Miller* holding did not "impose absolute liability upon dog owners whose dog is unrestrained despite their exercise of due care." *Villaume* at 795. Citing *Miller,* the *Villaume* Court stated that a mere violation of the Dog Law does not establish the causation factor required for a finding of liability; "Where proof of negligence rests upon a violation of the Dog Law, liability does not attach unless the violation is a substantial factor in bringing about the injuries sustained." *Id.* This is exactly the law with which the jury was charged. The court's charge was accurate and adequate on this point.

¶ 11 Wind also contends the court erred by instructing the jury that the dogs' actions *on the day in question* could be considered in determining whether the dogs had "violent propensities." In *Commonwealth v. Hake,* 738 A.2d 46, 1999 Pa.Cmwlth.Lexis 714 (Sept. 8, 1999), *appeal denied,* 561 Pa. 679, 749 A.2d 473 (2000), the court interpreted the 1996 amendments to the Dog Law and concluded, *inter alia,* that "the propensity to attack may be proven by a single incident of the infliction of severe injury or attack on a human being, clearly finding a 'propensity' to attack human beings by virtue of the attack in question, even if it is only the first attack." *Id.* at 49, **9. "The 1996 amendments effectively removed the previous "one free bite" interpretation [of the Dog Law] and the Statute now permits liability for the dog's first bite." *Id.* at 50, **12. On that basis, we agree the trial court did not err by instructing the jury it may consider the attack upon the appellees as evidence of the dogs' dangerous propensities.

¶ 12 Having found appellant Wind's arguments devoid of merit, we affirm the August 17, 2007, judgment of damages and delay damages as entered against her. We turn now to the three arguments presented by the landlord, appellant Kasprzyk.

¶ 13 Kasprzyk first argues the trial court erred by denying her motion for a compulsory nonsuit made at the close of appellees' case. Kasprzyk's brief at 10. Relying on *Kinley v. Bierly,* 876 A.2d 419 (Pa.Super.2005), appellant argues there was no evidence presented to establish she had any prior knowledge of the dogs' violent propensities, or that she "knowingly harbored a dog with violent propensities." *Id.* at 11. It is appellant Kasprzyk's position that "[t]he trial court abused its discretion and committed an error of law when it refused to grant Defendant Kasprzyk's request for entry of a Compulsory Nonsuit and, therefore, is entitled to Judgment Notwithstanding the Verdict or a New Trial." *Id.* at 14.

¶ 14 While a review of the docket entries in the certified record reveals no written motion for a nonsuit, we found, curiously, attached to appellant Kasprzyk's brief in support of her post-trial motion, at Exhibit "B", a motion for an involuntary nonsuit signed by counsel on January 12, 2007, before trial began. Record, No. 37, Exhibit "B". Also, we note with disfavor appellant's failure in her brief to identify where and when during the trial, memorialized in a 423–page transcript, that her motion for a nonsuit was made. On that basis alone, we need not address the issue on appeal; nevertheless, we *searched* the transcript and located Kasprzyk's oral motion on page 295, where counsel argued that the appellees had failed to prove that Kasprzyk, an out-of-possession landlord, was aware that the dogs were living in the house and/or displayed violent propensities, and therefore Kasprzyk could not be held liable for the appellees' injuries. The

court entertained oral argument, but denied relief. N.T. at 301. Our standard of review follows.

¶ 15 Because appellant proceeded with her defense following the denial of her motion for a compulsory nonsuit, "the trial court's ruling on the [motion] was rendered moot[,]" and we do not rule on the correctness of court's ruling as such. *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 668 (Pa.Super.2007). We consider appellant's argument in its proper context, as an appeal from the denial of Kasprzyk's motion for judgment notwithstanding the verdict (JNOV) and/or a new trial, as included in her post-trial motion. *See id.*; *see also* Record, No. 37, **Brief in Support of Motion for Post Trial Relief.**

¶ 16 When considering a challenge to the trial court's ruling denying a motion new trial or JNOV, we are guided by the following standards of review.

We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*Gbur v. Golio*, 932 A.2d 203, 206–207 (Pa.Super.2007) (citations and quotations omitted), *quoting Stalsitz v. Allentown Hosp.*, 814 A.2d 766, 771 (Pa.Super.2002),

*appeal denied* 578 Pa. 717, 854 A.2d 968 (2004)

¶ 17 When considering a challenge to denial of JNOV,

the standard of review for an order granting or denying judgment notwithstanding the verdict is whether there was sufficient competent evidence to sustain the verdict. We must view the evidence in the light most favorable to the verdict winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. Furthermore, judgment nov should be entered only in a clear case, where the evidence is such that no reasonable minds could disagree that the moving party is entitled to relief. Review of the denial of judgment nov has two parts, one factual and one legal:

Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded evidence at trial, we will not substitute our judgment for that of the finder of fact.

*Northeast Fence & Iron Works, Inc.*, *supra*, at 668 (citations omitted).

¶ 18 In their lawsuit, appellees alleged claims of negligence and negligence *per se*, those claims resting on the allegation appellant Kasprzyk had harbored and negligently failed to control a dangerous dog, resulting in injuries to the appellees. *See* 3 P.S. § 459–502–A, **Registration,** and § 459–505–A, **Public safety and penalties (c) Attacks causing severe injury or death.;** *see also* Record, No. 1, Complaint, at 5 and 9.

¶ 19 In *Palermo v. Nails*, 334 Pa.Super. 544, 483 A.2d 871, 873 (1984), this Court held, "a landlord out of possession may be held liable for injuries by animals owned and maintained by his ten-

ant when the landlord has knowledge of the presence of the dangerous animal and where he has the right to control or remove the animal by retaking possession of the premises." *See also Gallick v. Barto,* 828 F.Supp. 1168, 1993 U.S.Dist.Lexis 10412 (M.D.Pa.1993). Moreover, a landlord's knowledge of a dog's violent propensities may be inferred from the facts and circumstances. *Palermo, supra* at 873.

¶ 20 Viewing the evidence presented in the light most favorable to the appellees, and giving them the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences, we are constrained to agree with the court that JNOV in Kasprzyk's favor was not warranted. *See Northeast, supra.* However, in light of our holding *infra,* we need not resolve Kasprzyk's allegation that the court erred by denying her motion for JNOV. We have set forth in detail the facts and pertinent case law surrounding the entry of a JNOV in an effort to guide the trial court and the parties should this matter be retried, given our ultimate resolution.

■ ¶ 21 Kasprzyk's second and third allegations of error both relate to the jury charge and challenge the adequacy and accuracy of the court's instructions regarding the liability for negligence of an out-of-possession landlord. This is separate and distinct from the tenant's allegation of jury instruction error. Kasprzyk argues the court's refusal to give the requested instructions, not otherwise covered by the court's general charge, is cause for a new trial. *See Butler v. DeLuca,* 329 Pa.Super. 383, 478 A.2d 840 (1984). Appellant's two issues are set forth below:

II. Charging the jury on the dog law without making a clear distinction between its application to a dog owner or a landlord out of possession was misleading and confusing to the jury and, thus,

defendant Kasprzyk is entitled to a new trial.

III. Refusal to charge the jury on the duty of care of a landlord out of possession is a prejudicial error. Therefore, defendant Kasprzyk is entitled to a new trial.

Kasprzyk's brief at 15, 17. Kasprzyk argues the court's charge misstated the law as to an out-of-possession landlord's duty of care (1) by wrongly referencing and applying to the landlord the Dog Law, 3 P.S. § 459–101 *et seq.,* which is applicable only to an owner or keeper of dogs, and (2) by incorrectly inserting the phrase *"or should have known,"* in addition to the correct standard *"knows* of the presence of a dangerous animal," when instructing on the standard to be employed when considering the liability of an out-of-possession landlord for a vicious dog, Kasprzyk's brief at 18–19. Our standard of review, as stated above, is whether the court abused its discretion or committed an error of law with regard to the jury charge. *See Gorman, supra.*

¶ 22 We have reviewed the jury charge in its entirety and, on the basis of appellant Kasprzyk's challenge, we find the jury charge was confusing and, at worst, a misstatement of the law requiring a new trial. In its charge, the court summarized Sections 459–305 and 459–502–A of the Dog Law, **Confinement of dogs** and **Registration (a) Summary offense of harboring a dangerous dog,** respectively. Our review of the instruction which discusses liability for negligence and negligence *per se* with regard to "dangerous" dogs reveals, however, that the court failed to make a distinction between the two defendants, the tenant Wind and "keeper of the dog" versus the landlord Kasprzyk, resulting in reversible error. The referenced portion of the charge follows.

Now, I told you that the law is a violation—an unexcused violation of the dog law is negligence per se. And the dog law talks about dogs getting out. It used to be referred to as dogs running at large. Now it's a different thing, but it's the same concept. They need to be confined or on a leash or a chain. And it also defines what dangers dogs are and the negligence of keeping a dangerous dog.

Pennsylvania's dog law, which is a state law in effect at the time this harm occurred, provided in part that it is unlawful for *the owner or keeper* of any dog to fail to keep at all times such dog confined within the premises of the *owner*. This state law dictates the duty of care required of someone in the same situation as *Defendants*. If you find that there was a violation of this state law, you must find *Defendant* negligent as a matter of law.

However, before you answer that, you need to determine whether the negligence was a factual cause of the injuries. Now, that's with respect to the dog getting out.

The Pennsylvania dog law, which is a state law in effect at the time this harm occurred, provided in part that when a dog owner's dog has inflicted severe injury on a human being without provocation, the dangerous propensities of the animal are established by a single incident of attacking the human being. This state law dictates the duty of care required of someone in the same situation as the *Defendants*.

Pennsylvania's dog law, a state law in effect at the time, provides in part that the *owner or keeper of any dog* that aggressively attacks and causes severe injury or death of any human through the intentional, reckless or negligent conduct of the dog's owner has violated the Pennsylvania dog law. This state law dictates the duty of care required of someone in the same situation as the *Defendants*.

N.T., 1/23/07, at 12–13 (emphasis added).

¶ 23 This critical excerpt of the court's charge is confusing at it relates to the tenant/owner's responsibility versus that of the landlord, Kasprzyk. The court discusses the responsibility of the "owner keeper," but then instructs the jury with the plural "defendants," which necessarily includes landlord Kasprzyk. Moreover, landlord Kasprzyk is not the "owner keeper" of the dogs at issue, as defined by the Pennsylvania Dog Law, and therefore she is not subject to the provisions of that Law. *See* 3 P.S. § 459–102, **Definitions,** defining a dog owner as "every person having a right of property in such dog, and every person who keeps or harbors such dog or has it in his care, and every person who permits such dog to remain on or about any premises occupied by him." Further, establishing proof of an excused violation of the Dog Law was the sole burden of tenant/dog owner Wind, not Kasprzyk, who was neither charged with nor convicted of any violation of the Dog Law. Not only is the charge confusing as to the law, it is erroneous, and mandates the award of a new trial. *See Gorman, supra.*

¶ 24 We likewise agree with Kasprzyk that the court erred by inserting the phrase *"or should have known"* when instructing the jury on the standard of care to be applied to an out-of-possession landlord when considering her liability for injuries caused by a dog with violent propensities. Pursuant to Pennsylvania law as stated in *Palermo, supra,* a landlord may be held liable for injuries caused by a tenant's pet if it is proven he or she *knows* of the presence of that pet and that pet's violent propensities. *See also, e.g., Andrews v. DeStefano,* 71 Pa. D. & C. 4th 497

(Com.Pl.2005); *Dick v. Detwiler*, 7 Pa. D. & C. 4th 629 (Com.Pl.1990). This misstatement of the law by the trial court, adding the language *"or should have known,"* likewise mandates a new trial for Kasprzyk on the issue of her liability. *See Gorman, supra.* Accordingly, we reverse the finding of liability as to appellant Kasprzyk, and we vacate the award and judgment of damages and delay damages entered against her on August 17, 2007.

¶ 25 In summary, we affirm the August 17, 2007, judgment of damages and delay damages as against appellant Wind. Said same judgment is vacated as to appellant Kasprzyk, and her case is remanded for proceedings not inconsistent with this Opinion.

¶ 26 Judgment affirmed as to appellant Wind; judgment vacated as to appellant Kasprzyk.

¶ 27 Case remanded for proceedings consistent with this Opinion.

¶ 28 Jurisdiction relinquished.