J-A30036-18

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| TINA MCMICHAEL, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF SETH W. MCMICHAEL, DECEASED, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| PETER MCMICHAEL; JANICE MCMICHAEL; P&J CONSTRUCTION AND LANDSCAPE NURSERY LLC; AND MARKWEST ENERGY PARTNERS, L.P., | : : : : : : | |
| Appellees | : | No. 721 WDA 2018 |

Appeal from the Judgment Entered May 7, 2018
in the Court of Common Pleas of Beaver County
Civil Division at No(s): 11370-2013

| | | |
|---|---|---|
| TINA MCMICHAEL, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF SETH W. MCMICHAEL, DECEASED, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : : | |
| v. | : : : | |
| PETER MCMICHAEL, AND P&J CONSTRUCTION AND LANDSCAPE NURSERY LLC, | : : : : | |
| Appellants | : | No. 795 WDA 2018 |

Appeal from the Judgment Entered May 7, 2018
in the Court of Common Pleas of Beaver County
Civil Division at No(s): 11370-2013

BEFORE:    BENDER, P.J.E., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:            FILED APRIL 15, 2019

*Retired Senior Judge assigned to the Superior Court.

Peter McMichael (Peter) and P&J Construction and Landscape Nursery LLC (P&J) (collectively, Defendants) appeal from the judgment of $135,000 entered on May 7, 2018, against them and in favor of Tina McMichael (Wife), individually and as executrix of the estate of Seth McMichael (Decedent). In addition, Wife appeals from the judgment awarding her zero dollars in wrongful death damages.[1] After review, we affirm in part, reverse in part, and remand for proceedings consistent with this memorandum.

On August 30, 2013, Wife filed a complaint against Defendants following the death of her husband, Decedent, in a logging accident on Peter's property based on premises liability, negligence, and negligent supervision, seeking wrongful death damages and survival damages. Complaint in Civil Action, 8/30/2013. Defendants denied liability, and a jury trial commenced on July 12-17, 2017. At trial, the following evidence was established.

---

[1] Both Janice McMichael (Janice) and MarkWest Energy Partners, L.P. (MarkWest) appear on the caption in Wife's appeal, but neither is a party to this appeal. The trial court dismissed the complaint against Janice following preliminary objections because Wife's complaint failed to state a valid cause of action against Janice. Memorandum Opinion and Order, 5/26/2014. Wife settled with MarkWest prior to trial. See Order, 1/31/2017 (granting motion to approve stipulation to discontinue as to fewer than all defendants). For some unfathomable reason, despite the entreaties of the author of this Memorandum, the Civil Procedural Rules Committee refuses to correct the grammar in Rule 229(b)(1) which still refers to a discontinuance as to less than all parties.

Peter, Decedent's uncle, was an owner and officer of P&J, and entered into a contract on behalf of P&J with MarkWest for a right of way to install a pipeline on Peter's property. As part of that contract, P&J was to perform the tree clearing on the property. To accomplish this, Peter sought the aid of several relatives, including Decedent, David McMichael (David), and Michael Hudak (Hudak), to assist with the tree clearing. In the course of tree removal operations on January 25, 2013, a tree cut by Hudak struck Decedent, killing him. N.T., 7/13/2017, at 65-66, 117-18.

A few days before the accident, Decedent had asked his son, David, to help with clearing trees for the pipeline project, and stated that he would be paid for the work. David agreed to help, and on January 25, 2013, David met Decedent at the project site at 7:30 a.m. David Deposition, 6/5/2015, at 3-4.[2]

On the day of the accident, Peter was supervising the cutting operation. N.T., 7/13/2013, at 130-31. Decedent and Hudak were cutting trees. David Deposition, 6/5/2015, at 7. Peter, meanwhile, was using a bulldozer to make the access road passable, which resulted in his back being

---

[2] David and Hudak died prior to trial. Selected excerpts from David's deposition testimony were played for the jury. N.T., 7/13/2017, at 73. Citations to the pages of testimony refer to the page numbers as listed in the bottom corner of each page of the admitted deposition testimony, which is appended to the July 13, 2017 trial transcript.

turned to the cutters at times. N.T., 7/13/2017, at 131-32; David Deposition, 6/5/2015, at 7.

David assisted Decedent with his tools, but urged him to stop working because it was snowing heavily. David Deposition, 6/5/2015, at 6. David left the site to pick up his paycheck and Decedent's paycheck and bring back coffee for everyone on the job, believing that upon his return Decedent would be ready to leave for the day. Id. at 9-10.

At the time of the accident, Peter was still using the bulldozer, facing away from the cutters; Decedent was facing away from Hudak; and Hudak was cutting a tree, which split and fell in an unexpected direction, striking Decedent from behind. N.T., 7/13/2013, at 135, 138-39; N.T., 7/14/2017, at 101-02. Hudak flagged down Peter, and Peter found Decedent lying facedown with a tree limb weighing approximately 100-150 pounds on his back. Peter removed the limb, and he and Hudak attempted to resuscitate Decedent. N.T., 7/13/2017, at 135-36; N.T., 7/14/2017, at 106.

When David returned, he was stopped by a firefighter who informed him that Decedent had been killed. David Deposition, 6/5/2015, at 10-11. David observed Decedent in the ambulance with a large, deep gash on the bridge of his nose and around his left eye socket, a square forehead, and a torn-open right pant leg. Id. at 11.

Mitchell Sedlacek, an employee of MarkWest, responded to the scene following the accident and took photographs of where he believed the

accident occurred. These photographs were admitted as evidence and published to the jury. N.T., 7/13/2017, at 52, 55-60.

David assisted Peter with cleaning the project site after the accident, but did not notice anything related to the accident. David Deposition, 6/5/2015, at 11-12. David returned to the site the following day and found Decedent's safety glasses, as well as the tree he believed Decedent had been cutting on the near side of the creek by the access road. Id. at 12. He measured certain things at the site and recorded the distances.[3] Id. David also believed he had located the tree that Hudak had been cutting on the far side of the creek. Id.

Wife's logging expert, Kevin Snyder, testified at trial to the standard industry two tree-lengths rule, wherein no person should be within two tree-lengths of where someone is cutting. N.T., 7/14/2017, at 34-35. Snyder testified that it is the responsibility of the individual cutting the tree to ensure that the required safety distance area is clear before cutting, and it is the supervisor's role to ensure that safety guidelines are followed. Id. at 36-38. Defendants' logging expert, John David Bouch, also testified to the two tree-lengths rule, as did Peter. Id. at 121-22; N.T., 7/13/2017, at 150.

---

[3] David also stated that he took photographs, but those were not produced during the deposition. Though produced later, the trial court did not permit their admission because Wife failed to authenticate the photographs. N.T., 7/13/2017, at 83-84, 89; Trial Court Opinion, 4/19/2018, at 6-7.

Bouch testified that observing the two tree-lengths rule is the responsibility of every cutter in the area. N.T., 7/14/2017, at 127.

In Snyder's opinion, Decedent was within one tree-length of the tree Hudak was cutting, and Peter was not adequately supervising the work site. Id. at 37-38. On the other hand, Bouch testified that Peter did not fail to supervise adequately by turning his head for a period of time. Id. at 120-21.

Decedent was 51 years old when he died. N.T., 7/13/2017, at 99. Using Decedent's earned income from 2012,[4] Dr. William Houston Reed, an economic expert, calculated Decedent's projected lost income, minus personal daily maintenance costs, as follows: $455,135 if Decedent worked until age 63; $567,795 if Decedent worked until age 65; $637,569 if Decedent worked until age 67; and $782,202 if Decedent worked until age 70. Id. at 100-01, 104-08.

Wife and Decedent married in 1982 and had three children. Id. at 153. Decedent did repairs around the house, mowed the lawn, did 80% of the cooking, and drove Wife to work in bad weather. Id. at 156-57. After Decedent's death, Wife was unable to have several household items, including her furnace, repaired and she works overtime to pay bills. Id. at

---

[4] Decedent was laid off at the time of his death. N.T., 7/13/2017, at 110.

156-57, 160. Wife and Decedent's joint tax returns from 2007 through 2012 were admitted into evidence. Id. at 159-60.

On July 17, 2017, the jury returned a verdict, finding that all parties were negligent, and apportioned negligence at 60% to the Defendants and 40% to Decedent. The jury awarded Wife $225,000 in survival damages, which the trial court amended to $135,000 based on the jury's assignment of negligence. The jury awarded zero dollars in wrongful death damages. The parties filed cross-motions for post-trial relief. Wife sought a new trial with regard to her claims for wrongful death damages and survival damages. Motion for Post-Trial Relief, 7/25/2017. Defendants sought judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial based on pre-trial and trial errors. Motion for Post-Trial Relief, 7/27/2017. The court heard oral arguments. On April 19, 2018, by memorandum and order, the trial court denied all post-trial motions. Wife entered judgment on May 7, 2018, and both Defendants and Wife timely filed notices of appeal.[5]

APPEAL OF DEFENDANTS – JNOV CLAIMS

On appeal, Defendants present six issues for our review. Defendants' Brief at 3-4. We begin with the Defendants' first three claims, in which they argue that the trial court erred in denying JNOV because Wife failed to prove

_____

[5] This Court sua sponte consolidated the appeal and cross-appeal. Order, 6/20/2018. Defendants and Wife complied with Pa.R.A.P. 1925(b). The trial court issued an order relying on its April 19, 2018 memorandum opinion. Order, 6/25/2018.

(1) that Hudak was negligent; (2) that Hudak was the Defendants' servant; and (3) negligent supervision. Defendants' Brief at 36.

In considering these issues, we set forth the following. "We will reverse the [denial of JNOV] when we find an abuse of discretion or an error of law that controlled the outcome of the case." Jones v. Constantino, 631 A.2d 1289, 1292 (Pa. Super. 1993).

> We will review all of the evidence in the light most favorable to the verdict-winner and will give that party the benefit of every reasonable inference arising from that evidence while rejecting all unfavorable testimony and inferences. [JNOV] may be entered where: (1) the moving party is entitled to judgment as a matter of law and/or (2) the evidence is such that no two reasonable minds could disagree that the verdict should have been rendered for the moving party. Our scope of review is plenary concerning any questions of law. Regarding questions of credibility and the weight accorded the evidence at trial, however, we will not substitute our judgment for that of the fact-finder. [JNOV] should be entered only in a clear case, and any doubts must be resolved in favor of the verdict winner.

Murray v. Janssen Pharmaceuticals, Inc., 180 A.3d 1235, 1241 (Pa. Super. 2018) (internal quotation marks omitted).

1. HUDAK'S NEGLIGENCE

According to Defendants, the trial court erred in denying JNOV as to Hudak's negligence because the evidence proffered by Wife merely established an accident; it did not consist of evidence of what actually happened with sufficient clarity to permit the jury to conclude that Hudak was negligent. Defendants' Brief at 37.

In Pennsylvania, the elements of a cause of action based upon negligence are:

(1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks;

(2) defendant's failure to conform to the standard required;

(3) a causal connection between the conduct and the resulting injury;

(4) actual loss or damage resulting to the plaintiff.

R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005) (citation omitted).

In denying Defendants' motion, the trial court found that the evidence established a minimum two tree-lengths distance rule between cutters to ensure safety in the logging industry. Both experts testified that the responsibility for ensuring a two tree-lengths distance rests with the individual cutters. Evidence was presented that Hudak was cutting a tree less than the required two tree-lengths distance from Decedent. Trial Court Opinion, 4/19/2018, at 32. Thus, the trial court found that the jury's finding of negligence was within its purview, and saw no error in the evidence upon which it rested. Id. at 32-33.

Upon review of the record, we agree with the trial court that the evidence of record supported the jury's finding of negligence. Hudak breached his duty by failing to ensure that Decedent was outside the two tree-lengths distance before cutting the tree. The testimony at trial established that this failure caused Decedent's death. See N.T., 7/13/2013,

at 135, 138-39; N.T., 7/14/2017, at 37-38. Accordingly, the trial court did not abuse its discretion in denying Defendants' JNOV motion on this basis.

## 2. EMPLOYER-EMPLOYEE RELATIONSHIP

Defendants next contend that even if Hudak was negligent, they are entitled to JNOV because Wife failed to establish that Hudak was Defendants' servant. Defendants' Brief at 39-40.

> In determining whether the … relationship [is] one of master and servant or simply that of two independent contractors … the basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged. The hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result.
>
> While control of the work is an important factor, other considerations include: the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer; and the right to terminate the employment at any time. None of the factors is dispositive of a person's status as an employee and each case must be determined on its own facts.

Valles v. Albert Einstein Med. Ctr., 758 A.2d 1238, 1244 (Pa. Super. 2000) (citations omitted).

In denying Defendants' JNOV motion regarding Hudak's status as Defendants' servant, the trial court concluded that while the evidence was unclear as to whether Hudak was paid for his work, the evidence was clear that Peter solicited Hudak to work on the clearing project for P&J. Trial Court Opinion, 4/19/2018, at 31. The trial court believed this evidence was sufficient to submit the question of agency to the jury, and saw no reason to overturn the jury's verdict. Id. at 31-32.

Based upon our review of the record and the above factors, we agree with the trial court that there was sufficient evidence for the jury to find Hudak was acting as Defendants' servant at the time of the accident. See Valles, supra.

First, tree-clearing work is part of the regular business of P&J. P&J contracted with MarkWest to have P&J conduct the tree clearing on Peter's property, a business with which Peter was familiar as a supervisor in the construction industry for his corporation, P&J. N.T., 7/13/2017, at 117-19.

Second, a high level of skill was required for the performance of the work. Wife's expert testified that logging is "one of the most dangerous jobs in the country." N.T., 7/14/2017, at 31. He further opined that logging is not a job one can learn on one's own; rather, a logger must have some type of training or instruction given the numerous safety concerns. Id. at 31-32.

Third, Hudak was engaged in a distinct occupation or business. On January 25, 2013, all of the individuals clearing trees for P&J were relatives

of Peter. According to Peter, they were "all very, very, very, well versed [in] what they had to do" and were "as much a part of the operation as [Peter] was." N.T., 7/13/2017, at 119-20. Peter considered the relatives he recruited to be professionals in the field of tree clearing, and testified that "Hudak was in the union for five years or better, and I know he had training in the union." Id. at 125. Peter further testified that he had worked with Hudak before and knew he was capable of the work. Id. at 129.

Fourth, Peter, via his role in P&J, controlled the work. Peter supervised the tree clearing and decided when the workers were permitted to stop. Due to the inclement weather, he "authorized [Decedent and Hudak] to stop. [Peter] told them to finish cutting the tree that they were cutting, and [then they] were getting out of there." Id. at 130-31.

Fifth, P&J paid the workers at an hourly rate. At trial, Peter testified at trial that he was "[a]bsolutely not" paying a wage to any of the individuals working for him that day. Id. at 129. However, during his deposition, David testified that his father had told him that he would be paid at an hourly rate for the tree clearing work he completed on that date. In fact, David was away from the scene at the time of Decedent's death precisely because he was picking up, at a minimum, his and Decedent's paychecks for their work that day. David Deposition, 6/5/2015, at 4, 10. The jury was free to believe David's testimony over Peter's, and infer that because David

and Seth were being paid at an hourly rate, Hudak would also be paid at an hourly rate for the same work.

Accordingly, we find no abuse of discretion in the trial court's denial of Defendants' motion regarding Hudak's status as Defendants' servant.

## 3. NEGLIGENT SUPERVISION

Defendants also contend that the evidence of negligent supervision was insufficient. Defendants' Brief at 42.

Pennsylvania law defines negligent supervision as follows.

Our recognition of direct employer liability for its negligence is consistent with Section 213 of the Restatement (Second) of Agency, which provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

> * * *

> (c) in the supervision of the activity...

Heller v. Patwil Homes, Inc., 713 A.2d 105, 107 (Pa. Super. 1998).

In denying Defendants' JNOV motion regarding Peter's negligent supervision, the trial court found the testimonies of Peter and Wife's expert credible, and that they supported the jury's verdict. Trial Court Opinion, 4/19/2018, at 33-34.

Upon review, we agree with the trial court that this evidence supported the jury's verdict. The record reflects that the logging industry standard safety rule that a two tree-lengths area around any tree cutting must be

clear. It is the responsibility of the supervisor to ensure safety guidelines are followed because trees can fall in unpredictable directions, and logging is a very dangerous industry. Decedent was within one tree-length of Hudak at the time of the accident. Decedent's back was to Hudak when Hudak cut the tree, and Peter was running a bulldozer at the time with his back turned to the cutters. Thus, Wife's expert opined that Peter's supervision of the work site was inadequate. See N.T., 7/13/2017, at 131-32, 150; N.T., 7/14/2017, at 31-38, 121-122 Accordingly, viewing the evidence in the light most favorable to Wife as verdict-winner, the trial court did not abuse its discretion in denying Defendants' JNOV motion.

APPEAL OF DEFENDANTS – NEW TRIAL CLAIMS

Defendants' next set of claims relates to the trial court's denial of a new trial. Specifically, Defendants contend they are entitled to a new trial because (1) Wife's counsel violated the trial court's order in referring to David's photographs during closing argument; (2) Wife's counsel lacked candor, which resulted in the trial court admitting prejudicial hearsay testimony regarding comments supposedly made by Peter about David's death; and (3) Wife should not have been permitted to introduce evidence regarding David's beliefs as to where Decedent and Hudak were at the time of the accident. Defendants' Brief at 43-44.

We begin with our standard of review.

> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

Underwood ex rel. Underwood v. Wind, 954 A.2d 1199, 1206 (Pa. Super. 2008) (citation omitted).

## 1. CLOSING ARGUMENT

Defendants contend that the trial court erred in denying their motion for a new trial because Wife's counsel intentionally disregarded a trial court evidentiary ruling by explicitly referencing inadmissible evidence during closing argument. Defendants' Brief at 44. Specifically, Defendants contend the trial court erred by denying their motion for mistrial. Defendants' Brief at 46, 49.

By way of background, David stated during his deposition that he took photographs of the area the day after the accident. David Deposition, 6/5/2015, at 12. The photographs were not produced at that time. Due to their late disclosure and Wife's failing to authenticate the photographs at trial, the trial court ruled that they were inadmissible. See N.T., 7/13/2017, at 83-84, 89; Trial Court Opinion, 4/19/2018, at 6-7. Despite this ruling,

Wife's counsel referenced the photographs during closing argument, as follows.

> All right. Now let's talk about the pictures in this case. You did hear that David [] went out the day after this occurred and took some photographs. You haven't been able to see those photographs. Now, the law in Pennsylvania, there are Rules of Evidence that are in place for good reasons, and those pictures haven't been entered into evidence because Judge Ross has ruled they're not admissible.

N.T., 7/17/2017 (Volume III), at 17-18.

Defendants' counsel objected and requested a mistrial at sidebar. Id. at 18. The trial court denied Defendants' motion for mistrial, but held Wife's counsel in contempt of court for the violation. Id. at 19. Immediately following the short sidebar, the trial court provided the jury with the following cautionary instruction.

> Ladies and gentlemen, as to whether or not I admitted evidence is not for your concern. That is not a consideration. It was not appropriate for [Wife's counsel] to make that statement to you during his closing. You will completely disregard it.

> As I told you at the beginning of this trial, any ruling that I make outside the presence of the jury is not of your concern. You are not to consider it. It is not part of the evidence, and therefore it was not proper for [Wife's counsel] to make that statement to you in his closing. You shall completely disregard any reference to that.

N.T., 7/17/2017 (Volume III), at 19-20.

"Generally, in the absence of extraordinary circumstances, a prompt and effective curative instruction which is 'directed to the damage done' will suffice to cure any prejudice suffered by the complaining party. ... Moreover,

juries are presumed to heed a court's curative instructions." Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div., 781 A.2d 1263, 1275 (Pa. Super. 2001) (citations and footnote omitted).

We agree with the trial court that this instruction cured any prejudice to Defendants. The reference was inappropriate, but counsel did not show the photographs to the jury. Moreover, the record reflects that the jury was aware of the existence of the photographs (and that the jury did not see them) from the playing of David's deposition. See David Deposition, 6/5/2015, at 13. Accordingly, because the trial court took appropriate and immediate steps to cure any potential prejudice, we conclude there was no abuse of discretion in denying Defendants' motion for a new trial on this basis.

## 2. PETER'S ALLEGED STATEMENT

Defendants next contend that the trial court erred in denying their motion for a new trial because Wife's counsel misled Defendants and the trial court regarding a statement Peter supposedly made regarding the effect of David's death on Wife's case, resulting in the admission of prejudicial hearsay. Defendants' Brief at 50; Defendants' Reply Brief at 16-17.

Lawyers owe a duty of candor towards the trial court. Specifically, they shall not knowingly "make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]" Pa.R.P.C. 3.3(a)(1). We also keep in

mind our standard of review, that this Court "will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial." Underwood, 954 A.2d at 1206.

By way of background, prior to trial, Defendants filed a motion in limine to exclude, inter alia, a statement supposedly made by Peter, to Wife, about the impact of David's death on her wrongful death suit. Within the motion, Defendants argued that the statement should be excluded because it was irrelevant and prejudicial. See Motion in Limine to Preclude Irrelevant and Prejudicial Evidence, 6/6/2017, at ¶ 9; Brief in Support, 6/6/2017, at 3 (unnumbered).

A hearing on this motion was held on June 20, 2017. At the hearing, Defendants' counsel explained that he filed the motion based on a conversation with Wife's counsel. Specifically, "after David's death, [Wife's] counsel claimed that [Wife] told him that [Peter] made a statement to the effect of the star witness is now gone[.]" N.T., 6/20/2017, at 36; see also id. at 41 (Defendants' counsel explaining "[s]upposedly [Peter], at or around the funeral or the wake after the funeral for David ...allegedly ... says to [Wife], 'Your star witness is gone'"). Again, Defendants argued the statement's inadmissibility based on irrelevancy and prejudice. Id. In response, Wife's counsel argued that the statement was relevant to liability

and damages. Id. at 37. Defendants did not argue that the statement was inadmissible hearsay, nor did Wife argue that the statement was admissible as an exception to the rule against hearsay. In fact, hearsay was never brought up by either party. Nonetheless, the trial court ruled that the statement was admissible as an exception to the rule against hearsay as opposing party's statement under Pa.R.E. 803(25) and relevant to Peter's perception of the validity of Wife's lawsuit. Id. at 40-44.

At trial, Wife's testimony regarding the statement changed. Instead of a direct statement to her by Peter, she testified that someone, she did not know who, told her that Peter had said her star witness was dead. N.T., 7/13/2017, at 165 (on direct examination Wife testified that "[Peter] said my star witness was dead, and I don't remember who told me that"); id. at 168 (on cross examination Wife answered affirmatively when asked "So [Peter] did not make this alleged statement to you. Someone else came in and told you he said it? … And you don't know who said it?"). Defendants did not lodge an objection to the statement at trial.

The next day, while discussing the parameters of another witness's testimony, the trial court sua sponte addressed Wife's change in testimony.

> [Wife's counsel's response to the motion in limine] specifically says that statement was made directly to [Wife.]
>
> The evidence came out at trial contrary to that. That's going to stop. This [c]ourt believes it is incumbent upon the officers of the [c]ourt to maintain integrity in connection with what is going to be offered. Okay? There was no objection

made yesterday therefore I didn't address it, but that was an example of how things get screwed up in the courtroom.

[Wife's] testimony was the offer of proof that served as the basis for my admissibility of that statement.

N.T., 7/14/2017, at 11-12. Thereafter, the parties continued their earlier discussion. No explanation was given by Wife's counsel to justify his erroneous response to the motion in limine and no objection was lodged by Defendants' counsel.

On appeal, Defendants claim it was error to allow the admission of this statement based on the misrepresentations[6] of Wife's counsel pre-trial, because "if the trial court had been aware" that "the alleged statement was purportedly made to an unknown individual who then repeated what was supposedly said to [Wife] – the statement would have been excluded as hearsay[.]" Defendants' Brief at 54; Defendants' Reply Brief at 21 (arguing that the statement was inadmissible double hearsay). Defendants further argue that they were prejudiced by this error because the statement was admitted only because of the representation that Peter made the statement directly to Wife, and that admission allowed Wife's counsel to draw attention

---

[6] It is not at all clear that Wife's counsel intended any misrepresentation. In Wife's second brief, Wife asserts that her counsel was under the impression that Peter's alleged statement was made directly to Wife. Wife's Reply Brief at 27 n.4. The brief then states that counsel's misapprehension was corrected by Wife "immediately prior to trial." Id. Because of our determination of lack of prejudice, we need not determine the issue of credibility.

to the statement in his opening statement. Defendants' Brief at 54 (citing N.T., 7/13/2017, at 23). Finally, Defendants contend that because they objected to the statement in a pre-trial motion in limine, they were not required to renew that objection at trial in order to preserve this claim on appeal. Defendants' Reply Brief at 22.

It is well-settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. However, pursuant to Pa.R.E. 103, "a motion in limine may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion." Commonwealth v. McGriff, 160 A.3d 863, 866 (Pa. Super. 2017) (citation omitted). However, an appellant may not raise a new legal theory for the first time on appeal. Andrews v. Cross Atl. Capital Partners, Inc., 158 A.3d 123, 130 (Pa. Super. 2017). "[T]he object of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and thereby to avert the time and expense of appeals or new trials." Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 46 (Pa. 2011) (citation omitted). Failure to raise a contemporaneous objection will result in waiver on appeal. Id.

Here, Defendants raised for the first time in their motion for post-trial relief new theories as to why the statement should not have been admitted: lack of candor by Wife's counsel and inadmissible double hearsay.

Defendants' Motion for Post-Trial Relief, 7/27/2017, at ¶ 28 (arguing that Wife's counsel had misrepresented the nature of the statement); Amended Motion for Post-Trial Relief, 11/14/2017, at ¶ 4 (arguing counsel's lack of candor resulted in the admission of prejudicial hearsay). Once Defendants learned at trial that Wife heard the statement from a third party, counsel was required to raise any objection based on lack of candor by Wife's counsel or alleged hearsay at that time. Defendants failed to do so during her direct examination or cross examination. Even after the trial court chastised Wife's counsel for the unexpected change in testimony and stated that it did not address the issue because Defendants failed to lodge an objection, Defendants still failed to object on the basis of counsel's lack of candor or inadmissibility based upon hearsay. As such, we agree with the trial court that Defendants have waived this claim. See Samuel-Bassett, supra. Accordingly, the trial court did not abuse its discretion in denying Defendants' motion for a new trial in this regard.

Even if not waived, Defendants are only entitled to relief where the court's error prejudiced Defendants to such a degree that a new trial was warranted. See Underwood, supra. Upon review, we agree with the trial court that Defendants were not prejudiced by the statement "because defense counsel was given ample opportunity to cross-examine on this issue and severely undercut the testimony by having [Wife] admit that not only did she not hear the statement directly, but also she did not even remember

who allegedly told her this." Trial Court Opinion, 4/19/2018, at 30-31. Counsel's effective cross examination undercut Wife's credibility regarding the statement. Moreover, this passing reference in an extensive wrongful death case spanning multiple days did not result in prejudice to Defendants. See Underwood, supra. Accordingly, we conclude that the trial court did not abuse its discretion in denying Defendants' motion for a new trial.

### 3. DAVID'S TESTIMONY AS TO LOCATION OF DECEDENT AND HUDAK

Defendants next contend that the trial court erred in denying their motion for a new trial because Wife should not have been permitted to introduce evidence of David's investigation of the accident scene the day after the accident. Specifically, Defendants argue that because David was not present at the time of the accident and lacked personal knowledge of what happened, his conclusions were pure speculation. Defendants' Brief at 56, 59.

Here, Defendants argued this as a motion in limine prior to trial.

A trial court's decision to grant or deny a pre-trial motion in limine is subject to an evidentiary abuse of discretion standard of review. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

Crespo v. Hughes, 167 A.3d 168, 177 (Pa. Super. 2017) (citations and quotation marks omitted). With regard to lay opinion testimony, we keep the following in mind.

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

In this case, Defendants sought to preclude David's photographs, notes, drawings, and certain portions of David's deposition based on the argument that David lacked personal knowledge to offer a lay opinion as to where the accident happened. See N.T., 6/20/2017, at 26-32; N.T., 7/10/2017, at 24-25. Specifically, the portion of deposition testimony to which Defendants objected relating to this claim concerned the location of safety glasses, certain measurements that were taken, and the identification of the trees Hudak and Decedent had been cutting. N.T., 7/10/2017, at 25-27 (quoting David Deposition, 6/5/2015, at 12). Argument was heard on June 20, 2017, and July 10, 2017. As discussed supra, the trial court excluded the photographs because they were not authenticated. The trial court did, however, permit the introduction of David's deposition pertaining to measurements he recorded and observations he made the day after the

accident, finding that Defendants' challenge went to the weight of the evidence, not its admissibility, and the evidence proffered contained no opinions. N.T., 7/10/2017, at 61.

In denying Defendants' motion for a new trial regarding David's investigation testimony, the trial court offered the following.

> The [trial c]ourt does not agree that this testimony was speculation and conjecture. David [] was at the scene on the day of the accident and helped his [U]ncle Peter [] clean up the area. He was able to generally view the area of the accident on the date in question and went back the following day. When he went back, the area was taped off. He simply testified to items that he found and measurements that he made. These statements were either based upon observations and first-hand knowledge, as well as measurements, or general lay opinions based upon his perceptions which could help the jury to clearly understand his testimony or to determine a fact at issue. As such, the testimony was admissible under Pa.R.E[]. 701 and the necessary foundation was present for the testimony to be admitted. The [trial c]ourt does not believe that it abused its discretion by admitting this evidence and further does not believe that its decision was unreasonable, arbitrary or capricious and was certainly not motivated by partiality, prejudice, bias or ill will.

Trial Court Opinion, 4/19/2018, at 28.

Our review of the record reveals that David was present at the work site the morning of the accident. On the day of the accident, David observed; (1) the area in which his father, Decedent, was working, as well as Hudak; (2) the safety equipment and tools that Decedent was utilizing; and (3) the general area immediately following the accident in the presence of Peter, who was present at the time of the accident. David went back the

following day to survey the area of the accident. At that point, the area was already taped off. Based upon his observations, he believed he found the trees Decedent and Hudak had been working on, as well as the location of Decedent's safety glasses, and he made certain measurements. We conclude that the evidence was proper lay opinion testimony based on David's perceptions. Moreover, the jury was aware that David was not at the scene of the accident when it occurred, and therefore could weigh his testimony accordingly. Thus, the trial court did not abuse its discretion in denying Defendants' motion.

APPEAL OF WIFE

Wife raises one issue on appeal: whether the trial court erred in refusing to grant a new trial limited to damages on her wrongful death claim. Wife's Brief at 6.

As a prefatory matter,

[w]rongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. The damages recoverable in a wrongful death action include the present value of the services the deceased would have rendered to the family, had [he or] she lived, as well as funeral and medical expenses.

Kiser v. Schulte, 648 A.2d 1, 4 (Pa. 1994) (citations omitted).

As noted supra, this Court "will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion." Underwood, supra.

A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to shock one's sense of justice a new trial should be awarded. It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judg[]ment for the jury's. However, where the injustice of the verdict stand[s] forth like a beacon, a court should not hesitate to find it inadequate and order a new trial.

Kiser, 648 A.2d at 4 (citations and quotation marks omitted).

An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

Mader v. Duquesne Light Co., 199 A.3d 1258, 1263–64 (Pa. Super. 2018) (citations and quotation marks omtted). "A new trial limited to the issue of damages will be granted where: (1) the issue of damages is not 'intertwined' with the issue of liability; and (2) where the issue of liability has been 'fairly determined' or is 'free from doubt.'" Kiser, 648 A.2d at 8 (citations omitted).

In support of her wrongful death damages, Wife testified to Decedent's services to the household, including repairs, servicing the furnace, mowing the lawn, cooking, and driving Wife to work in inclement weather. See N.T.,

7/13/2017, at 156-57. Wife did not testify as to an estimated amount of the net economic value due to the loss of these services. While Defendants subjected Wife to extensive cross examination on other topics, Defendants did not challenge Wife's testimony regarding services that Decedent performed for the household.

In its opinion, the trial court found that Wife failed to present sufficient evidence of the value of her economic and non-economic loss for wrongful death damages, and therefore the jury was free to disregard Wife's testimony regarding same, and award zero dollars. Trial Court Opinion, 4/19/2018, at 22-23.

On appeal, Wife contends that the jury's award of zero dollars in wrongful death damages shocks one's sense of justice given Wife's credible evidence and Defendants' failure to challenge said evidence. "It was simply impossible, absent mistake, confusion or corruption, for this jury to have concluded that [Decedent] would not have contributed a dime to his family or in any way supported the[ family] from January 2013 until the date of his natural death." Wife's Brief at 26. Thus, Wife contends that the trial court erred in denying her motion for a new trial, and that "[t]he trial court's rationale for upholding the jury's award is as manifestly unreasonable, arbitrary, and capricious as the award itself." Id.

Defendants argue that the trial court did not err in denying Wife's motion for a new trial because she failed to present sufficient evidence of the

value of Decedent's services, the nature of their relationship, or the impact of Decedent's death on her and her life. Defendants' Brief at 21-25, 29, 31. Thus, Defendants argue that the award of zero dollars "was a reasonable response to her failure to provide the jury with evidence from which it could calculate what, if any, pecuniary loss she experienced as a result of [Decedent's] death." Id. at 31.

Insofar as Wife alleges that her testimony regarding wrongful death damages was unchallenged, we also consider the following.

> [If] there is no argument or opposition on a particular point, the jury may not be free to disregard such information. Indeed, to "controvert" means "[t]o raise arguments against; voice opposition to." "Uncontroverted" evidence, therefore, is evidence which is unopposed or unchallenged, not merely uncontradicted. If one party has the burden of proof, opposing counsel may strenuously controvert the evidence through cross-examination and argument; reasons not to accept the plaintiff's evidence may suffice to prevent the meeting of that burden, even without affirmative countervailing evidence.

Carroll v. Avallone, 939 A.2d 872, 875 (Pa. 2007) (citation omitted) (finding that evidence was not uncontroverted where defense counsel cross-examined plaintiff's expert and challenged the underlying facts supporting survival damages).

At trial, the only statement vaguely referencing wrongful death damages by Defendants was during its closing argument.

> Another item of damage is the support that [Decedent] was providing to the family, and so, I don't recall hearing any testimony about what that was. We know [Wife] works full-time, and I don't believe there was any indication there were any

children living in the home, so you'll have to determine what, if any, amount that was, whether there was any additional support to the family, and the Judge instructs on all [of that], you don't have to rely on me.

N.T., 7/17/2017 (Excerpt II), at 7. However, counsel's failure to recall what evidence Wife presented does not amount to a challenge to the underlying facts supporting Wife's wrongful death damages. Thus, unlike in Carroll, Defendants here did not contest, through expert testimony, cross examination, or argument, the services Decedent rendered to his household with regard to wrongful death damages.

Despite Wife's testimony, the jury awarded Wife zero dollars in wrongful death damages. While Wife did not present specific dollar amounts for the services Decedent rendered to the household, it unquestionably amounted to more than zero dollars. Instead of attempting to estimate the amount of these services, the jury completely disregarded the evidence presented on the question of wrongful death damages and settled on an inadequate amount of zero dollars. Therefore, we conclude that the trial court abused its discretion in denying Wife's motion for a new trial as to wrongful death damages. See Carroll, 939 A.2d at 874 (stating an appellate court's "standard of review [of a denial of a motion for a new trial] is limited to determining whether the trial court abused its discretion or committed an error of law").

Because the issue of wrongful death damages is not intertwined with the issue of liability, and the issue of liability has been fairly determined by the jury, we reverse the judgment awarding Wife zero dollars in wrongful death damages, and remand for a new trial limited to wrongful death damages. See Kiser, 658 A.2d at 8.

Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2019